*In re* MARRIAGE OF HARVEY J. OLSHER, Petitioner and Counterrespondent-Appellant, and GAIL P. OLSHER, Respondent and Counterpetitioner-Appellee.

First District (1st Division)    No. 78-1043

Opinion filed October 29, 1979.

628

Gary E. Dienstag, of Haas & Dienstag, Ltd., of Chicago (Louis Jaffe, of counsel), for appellant.

Allen H. Schultz and Jay L. Schultz, both of Chicago (Schultz & Schultz, of counsel), for appellee Gail P. Olsher.

Christina Fitzpatrick, of Chicago, for appellee Thomas H. Stern.

Michael Weininger, of Chicago, guardian ad litem.

Mr. JUSTICE CAMPBELL delivered the opinion of the court:

The petitioner, Harvey J. Olsher,[1] appeals from a judgment of the circuit court of Cook County apportioning the parties marital property, awarding maintenance and child support to the respondent, Gail P. Olsher, and awarding attorneys fees. On appeal, the petitioner urges that the trial court: (1) erroneously vacated the property settlement entered into by the parties in that there was an absence of fraud, coercion, or violation of public policy; (2) failed to value certain marital property in disregard of the requirements of section 503(c) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)); (3) awarded excessive amounts of child support, maintenance, and attorneys fees; (4) erred in establishing a trust for each of the parties' minor children which transferred the corpus of the trust to each child upon their majority; and (5) erroneously required the parties to repay an alleged debt to respondent's father from the house proceeds in contravention of an order of court restricting the parties from incurring debts during the separation period. We reverse in part and affirm in part.

Petitioner filed a complaint for divorce on November 1, 1976, on the grounds of mental cruelty. On that same day, upon petitioner's motion, the trial court entered a temporary restraining order prohibiting the parties from disposing of any assets in their possession or over which they exercised control and from "incurring any debt for which the other party would or could become legally obligated for payment." This was continued throughout the course of these proceedings. The respondent generally denied the petitioner's allegations and filed a counterclaim for divorce, also alleging mental cruelty. This counterclaim was subsequently amended to allege desertion as an additional ground.

---

[1] It should be noted that while Harvey J. Olsher filed the original complaint in this action, the dissolution of marriage entered on November 10, 1977, granted Gail P. Olsher's counterclaim for divorce. For the purposes of this opinion, we will follow the parties' briefs and refer to Harvey J. Olsher as petitioner and Gail P. Olsher as respondent.

On June 15, 1977, during the pretrial conference of this matter, the parties reached a property settlement. Thereafter, the petitioner dismissed his complaint and a proveup was held that same day on the respondent's amended counterclaim. After the proveup, the trial court orally granted the parties a judgment for divorce and stated that the parties' oral agreement would be incorporated into the final judgment for divorce. The court then ordered counsel to prepare the final judgment order and to have the parties approve the property settlement agreement before submitting the judgment order to the court for its approval. Before a copy of the final judgment order had been prepared or approved by counsel, however, the respondent filed a petition to set aside the proceedings. Pursuant to that motion, the trial court, on September 21, 1977, reinstated the complaint and counterclaim and returned the case to the contested trial call. An attorney was subsequently appointed by the court to represent the interests of the minor children. (Ill. Rev. Stat. 1977, ch. 40, par. 506.) Pursuant to section 403(e) of the Illinois Marriage and Dissolution of Marriage Act, a judgment of dissolution of marriage[2] was entered on November 10, 1977.

The following facts are pertinent to the issues raised by the parties on appeal. The parties were married on June 18, 1961, and separated on October 13, 1976. During the marriage three children were born: Cindy, Scott, and Steven. Until their separation, the parties lived with their children at the marital home located at 9223 North Hamlin, Skokie, Illinois. This marital property was held in joint tenancy by the parties and was estimated to have a fair market value of between $128,000 to $140,000, with a current indebtedness of $45,000. Other marital property included four shares of stock in Foremost Sales Promotion, Inc. (hereinafter Foremost), held by the parties in joint tenancy, the house furnishings valued at from zero to $20,000, several insurance policies, and a profit-sharing plan at Foremost valued at near $20,000 and payable upon the petitioner's permanent disability or upon his reaching age 65.

The record also discloses that the 13-year-old son, Scott, suffers from childhood schizophrenia. Scott is currently enrolled at the Menninger Foundation (hereinafter Menninger) in Topeka, Kansas, where he is receiving treatment in a long-term treatment program. The nature of Scott's illness requires that he receive residential treatment geographically separated from his family. It is of the opinion of the Menninger staff that Scott will require two to three years of such treatment at the average yearly cost of approximately $66,000. The extent of the parties' insurance

---

[2] Although this action was commenced by the filing of a complaint for divorce, the judgment of dissolution of marriage was entered because of the applicability of the new Illinois Marriage and Dissolution of Marriage Act to the present action. The new act also provides for bifurcated hearings with the grounds tried separately from the property and support issues.

coverage for this hospitalization and for Scott's earlier hospitalization at Forest and Old Orchard Hospitals is uncertain.

After hearing the evidence on the property and support issues, the trial court entered an order on May 5, 1978, providing in pertinent part that: (1) the respondent was to receive custody of the children; (2) the marital home was to be sold and the proceeds used to pay, among other debts, money allegedly owed to Irving Robins, respondent's father; (3) attorneys' fees were to be paid from the proceeds in the amount of $7,000 for Thomas T. Stern, petitioner's attorney, $7,000 for Edelman and Rappaport, respondent's attorney, and $2,500 to Michael Weininger, the court-appointed guardian ad litem; (4) $5,000 trusts for Cindy and Steven were to be established from the proceeds with the balance of the proceeds placed in trust for Scott; (5) petitioner's contribution to the profit-sharing plan should be divided between Cindy and Steven and placed in their respective trust accounts with any contributions made to the plan from Foremost to be placed into Scott's trust; (6) petitioner was to pay 32% of his net income as child support and 5% as maintenance; (7) petitioner was to be responsible for all extraordinary medical expenses; and (8) each party was to receive $12,000 from the sale of the home.

■■ The petitioner has challenged the applicability of the new Illinois Marriage and Dissolution of Marriage Act to this action. The new act took effect on October 1, 1977, and provides that it shall apply to all actions in which a judgment had not been entered. (Ill. Rev. Stat. 1977, ch. 40, par. 801(b).) Neither the judgment for dissolution of the marriage entered on November 10, 1977, nor the property disposition order of May 5, 1978, was entered prior to the October 1, 1977, effective date, consequently, this matter is governed by the new act. *Schuppe v. Schuppe* (1979), 69 Ill. App. 3d 200, 387 N.E.2d 346.

■■■ Before going on to consider the petitioner's arguments on appeal, we must answer respondent's contention that this court does not have jurisdiction to hear this appeal. The respondent contends that neither the May 5, 1978, order, nor the September 21, 1977, order, may be considered on appeal because the former order is a consent decree and consequently not appealable while the latter order was not recited by the petitioner in his notice of appeal as required by statute. (Ill. Rev. Stat. 1977, ch. 110A, par. 303(c), (2).) We reject both contentions. It is well established that in a contested trial, the mere approval of the form of a decree by counsel does not convert the decree into a consent decree or otherwise act to show a party's acquiescence in an order. (*Sampson v. Village of Stickney* (1962), 24 Ill. 2d 134, 180 N.E.2d 457; *James C. Wilborn & Sons, Inc. v. Heniff* (1965), 56 Ill. App. 2d 217, 205 N.E.2d 771.) The record reveals that, although the issue of the divorce was not contested, the disposition of property was hotly contested. We, therefore, find that under *Sampson*,

this order was not a consent decree but a final and appealable order. As the petitioner filed a timely notice of appeal we have jurisdiction. The September 21, 1977, order setting aside the settlement agreement was interlocutory in nature (*Wessel v. Gleich* (1975), 33 Ill. App. 3d 204, 337 N.E.2d 743); consequently, it may now be reviewed as part of the record brought upon appeal. *Conover v. Smith* (1974), 20 Ill. App. 3d 258, 314 N.E.2d 638; *Downey v. Industrial Com.* (1969), 44 Ill. 2d 28, 253 N.E.2d 371.

We next consider the petitioner's contention that the trial court's order of September 21, 1977, setting aside the property settlement reached by the parties on June 15, 1977, and returning the case to the contested trial call was improper. As a general rule, courts look favorably upon property settlements (*Guyton v. Guyton* (1959), 17 Ill. 2d 439, 161 N.E.2d 832; *Walters v. Walters* (1951), 409 Ill. 298, 99 N.E.2d 342) because they represent an attempt by the parties to settle their property interests amicably. As such, courts will uphold this type of an agreement once approved by the court absent a finding that it is unfair or unequitable, tainted with fraud, the product of coercion or against public policy or morals. (*James v. James* (1958), 14 Ill. 2d 295, 152 N.E.2d 582; *Gaddis v. Gaddis* (1974), 20 Ill. App. 267, 314 N.E.2d 627.) Such a determination may be made upon a party's motion to set aside the proceedings (*James v. James; Crawford v. Crawford*) or by the court upon its own initiative (*Mayeur v. Mayeur* (1976), 42 Ill. App. 3d 7, 355 N.E.2d 358). The decision to set aside a property settlement "must be determined in light of the positions and needs of the individuals concerned * * *." *Horwich v. Horwich* (1979), 68 Ill. App. 3d 518, 386 N.E.2d 620.

■■ ■ The record in the present case reveals that the trial court personally stated its doubts concerning the equity of the parties' settlement agreement and conditioned acceptance of the agreement upon the parties' approval of the agreement once it was reduced to writing. Neither respondent nor her counsel approved the agreement subsequent to the first prove-up on June 15, 1977, nor has a written order been approved by counsel and submitted to the court for entry of the decree as requested by the trial court. Furthermore, the respondent's petition to set aside the June 15, 1977, proceeding informed the court that the parties' son, Scott, suffered from a severe psychological problem which was not totally taken into consideration in the property agreement of June 15, 1977. Under this set of circumstances, the trial court's determination that the parties were not bound by the proposed agreement was proper. Moreover, as it was necessary to conduct a hearing as to an equitable distribution of the property (*Mayeur v. Mayeur*), it was proper to return the cause to the contested trial call.

The petitioner next contends that the trial court's disposition of the

four shares of stock in Foremost was improper because the court failed to place a value upon the stock before disposing of it as an item of marital property, as required by the new Illinois Marriage and Dissolution of Marriage Act. (Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(2).)[3] The respondent contends that as the stock had no market value, it was unnecessary for the court to consider the value of the stock in settling upon an equitable division of the parties' property.

■■ Under the new act, the property of the parties to a marriage is classified as either marital or nonmarital property. In classifying the parties' property there is a presumption that all property obtained during the marriage is marital property despite the form of the title in which the property is held. (Ill. Rev. Stat. 1977, ch. 40, par. 503(b).) Although the respondent alleged in her counterclaim that she had special equities in the stock which under the new act might justify classifying the property as nonmarital, no proof was offered to substantiate these allegations and therefore, the presumption of marital property is not rebutted. Marital property, the act states, should be divided without regard for the fault of the parties in "just proportions" taking into consideration all relevant factors including:

"(1) the contribution or dissipation of each party in the acquisition, preservation, or depreciation or appreciation in value, of the marital and nonmarital property, including the contribution of a spouse as a homemaker or to the family unit;

(2) the value of the property set apart to each spouse;

(3) the duration of the marriage;

(4) the relevant economic circumstances of each spouse when the division of property is to become effective, including the desirability of awarding the family home, or the right to live therein for reasonable periods, to the spouse having custody of the children;

(5) any obligations and rights arising from a prior marriage of either party;

(6) any antenuptial agreement of the parties;

(7) the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities, and needs of each of the parties;

(8) the custodial provisions for any children;

(9) whether the apportionment is in lieu of or in addition to maintenance; and

(10) the reasonable opportunity of each spouse for future acquisition of capital assets and income." Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(1)-(10).

---

[3] Section 503 is derived from section 307 of the Uniform Marriage and Divorce Act.

■■ ■ The only evidence pertaining to the value of the stock given at the trial was the testimony by the petitioner, Harvey Olsher, that Foremost Sales Promotion, Inc., was a closely held corporation formed by Irving Robins, respondent's father, that the Olshers' shares represented approximately 40 percent of the total outstanding shares in the corporation, and that as the corporation was a closely held corporation, the stock had no recognized market value. From this testimony the respondent concludes that the stock was without value. We do not agree. As the supreme court has noted, stock ownership generally confers upon a shareholder "one or more of the rights to participate 'in the control of the corporation, in its surplus or profits, *or* in the distribution of its assets.'" (*Stroh v. Blackhawk Holding Corp.* (1971), 48 Ill. 2d 471, 477, 272 N.E.2d 1.) Stock is usually valued at its market value, "the price which a willing purchaser will pay to a willing seller in a voluntary transaction." (*In re Estate of Voss* (1973), 55 Ill. 2d 313, 315, 303 N.E.2d 9.) Notably, market value is sometimes above and sometimes below the actual value of the stock. *In re Estate of Voss.*

■■ In a close corporation the corporation's shares are not listed on a stock exchange or actively dealt in by brokers and, therefore, there is no established market for the corporation's stock. (See generally, 1 F. Hodge O'Neal, Close Corporations §1.07 (1971).) The shareholders of a close corporation, however, like those of any corporation, do realize a value from stock ownership in that they have certain rights of control or future profits. Furthermore, courts have recognized an ascertainable value for shares of stock in closely held corporations. *Geving v. Fitzpatrick* (1978), 56 Ill. App. 3d 206, 371 N.E.2d 1228; *Stewart v. D. J. Stewart & Co.* (1976), 37 Ill. App. 3d 848, 346 N.E.2d 475; *Flynn v. Zimmerman* (1960), 23 Ill. App. 2d 467, 163 N.E.2d 568.

The trial court, contrary to the respondent's position, also placed a value upon the stock. The court, in awarding the stock to the respondent stated:

> "* * * the wife will have the two children and she will need additional funds. She will need additional security in the raising of those two children. She will also have the responsibility, of course, along with the father of visiting Scott at the hospital which is a substantial expense * * * and the stock is awarded to the wife which I think is equitable under the circumstances."

■■ An equal division of the marital property is not required by section 503 (*Kujawinski v. Kujawinski* (1978), 71 Ill. 2d 563, 376 N.E.2d 1382; *Schubert v. Schubert* (1978), 66 Ill. App. 3d 29, 383 N.E.2d 266); however, the trial court must consider all relevant factors before exercising its discretion in disposing of the marital property. (*Schuppe v. Schuppe* (1979), 69 Ill. App. 3d 200, 387 N.E.2d 346; *Schubert v. Schubert.*) In the

present case we find that in the absence of evidence of the stock's value, the trial court's division of the property was an abuse of discretion. Clearly, without evidence of the respective values of the various items of the marital property it was impossible for the court to divide the marital property in "just proportion" as required by the statute. See generally 24 Am. Jur. 2d *Divorce & Separation* §933, at 1068 (1966).

In reaching this conclusion, we find that the present case is distinguishable from *Ayers v. Ayers* (1978), 61 Ill. App. 3d 936, 378 N.E.2d 792, decided recently by the fourth district on this same issue. There, the court affirmed the disposition of the marital property of the parties without assigning a specific value to a 10-acre tract of land because there was "some evidence" of its value in that evidence was introduced of the purchase price of the land some five years earlier. Moreover, other relevant factors supported the disposition.

In the present case the only evidence of the value of the stock was a stock redemption agreement dated April 16, 1975, between Foremost, Charles A. Laff, and the shareholders of Foremost by which the corporation agreed to buy back a deceased or withdrawing stockholder's shares. The fair market value of the stock at that date was determined to be $15,000 and the agreement provided for a redetermination of the stock's value within 90 days following the end of each fiscal year. The failure to redetermine the value of the stock resulted, under the agreement, in a market value equal to the last previously recorded value. At the trial no evidence was given concerning the last recorded value of the stock. Nor do we think that the value of the stock in 1975 should be regarded as "some evidence" of the value of the stock under *Ayers*. Unlike land, which has a fairly stable value, the value of stock fluctuates freely with the operation of the business. Therefore, a past value would not give the trial court an accurate idea of the stock's worth. Accordingly, we remand this case to the trial court for a determination of the value of the stock and an equitable division of the marital property considering all relevant factors. Ill. Rev. Stat. 1977, ch. 40, par. 503(c)(1)-(10).

■■ ■ The division of marital property is among those factors which must be considered in determining the amount of maintenance (Ill. Rev. Stat. 1977, ch. 40, par. 504(b)(1)), child support (Ill. Rev. Stat. 1977, ch. 40, par. 505(2)), and attorneys fees (Ill. Rev. Stat. 1977, ch. 40, par. 508(a)). Moreover, trial courts must consider the overall picture in disposing of marital property while providing for maintenance, child support, and attorneys fees. (*Raski v. Raski* (1978), 64 Ill. App. 3d 629, 381 N.E.2d 744.) With this proposition in mind, Illinois courts and the courts of other jurisdictions adopting the Uniform Marriage and Divorce Act have found it desirable to remand to the trial court all interrelated property and support issues once it has been determined that a marital

asset was not considered at the time of the original disposition (*Schubert v. Schubert* (1978), 66 Ill. App. 3d 29, 383 N.E.2d 266), or that a marital asset was improperly valued. (*In re Marriage of Lodholm* (1975), 35 Colo. App. 411, 536 P.2d 842; *Rieger v. Christensen* (Colo. App. 1974), 529 P.2d 1362.) We find this approach consistent with the intent of the act to provide for the reasonable support of the parties and their children while minimizing the possibly harmful effects caused to all by the dissolution of the marriage. (Ill. Rev. Stat. 1977, ch. 40, par. 102(4), (5).) Accordingly, we must also order the trial court to reconsider on remand whether any change in the attorneys fees, maintenance, or child support is warranted. Moreover, the other property awards, although not challenged on appeal, may also be modified if the trial court finds such changes necessary to promote a just distribution of marital property. *Raski v. Raski.*

■■ In sending back the issue of attorneys fees for reconsideration, it must be noted that the record fails to disclose on what basis the trial court awarded fees of $2,500 to the attorney appointed by the court to represent the interests of the children. (Ill. Rev. Stat. 1977, ch. 40, par. 506.) The petition by Mr. Weininger only sought $2,075. In light of the scarcity of funds available upon the dissolution of this marriage, we think this award was an abuse of the trial court's discretion. Therefore, we reverse that award.

■■ ■ We turn next to the petitioner's contention that the trusts established for the three minor children by the trial court exceeded its discretion under section 503(d). (Ill. Rev. Stat. 1977, ch. 40, par. 503(d).) The trusts at issue were to be established, according to the order of May 5, 1978, from proceeds of the sale of the marital home and from the petitioner's profit sharing benefits. Furthermore, the trusts were to terminate upon each child's reaching the age of majority. At that time the corpus of each trust would be transferred outright to the adult child. Section 503(d) provides that:

> "The court may protect and promote the best interests of the children by setting aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent child of the parties."

A trial court, in determining that a section 503(d) trust should be created from the estates of the parties, must initially consider whether such a trust fund is necessary to "protect and promote the best interests of the child" as required by the statute. (Ill. Rev. Stat. 1977, ch. 40, par. 503(d).) A review of the record suggests future financial instability for the parties and their children caused by the various expenses incident to Scott's education and medical treatment. We cannot conclude that the trial court abused its discretion in creating the trusts for the parties three minor

children to protect them as much as possible from the financial problems faced by the parents stemming from Scott's illness.

■■ Once this determination has been made, the question remains as to the type of trust which may properly be established under the act. The propriety of establishing a trust for a minor child which distributes the corpus to the child upon achieving the age of majority was first considered in *Raski v. Raski* (1978), 64 Ill. App. 3d 629, 381 N.E.2d 744. That court following *Sutherland v. Sutherland* (1969), 77 Wash. 2d 6, 459 P.2d 397, and *Farley v. Farley* (1964), 227 Cal. App. 2d 1, 38 Cal. Rptr. 357, held that a trust which extends the parents' obligation of support past the duration of a child's minority is invalid because it requires parents to convey property inter vivos to adult children as a part of a divorce decree. These decisions are consistent with the traditional Illinois rule that a parent's obligation to support a child terminates at the child's majority except for educational expenses. (*Prenzler v. Prenzler* (1977), 55 Ill. App. 3d 244, 370 N.E.2d 642; *Strum v. Strum* (1974), 22 Ill. App. 3d 147, 317 N.E.2d 59.) Therefore, we find *Raski* to be controlling here.

■■ The petitioner's last argument focuses upon the trial court's order that certain debts were to be paid from the proceeds of the sale of the marital home including certain money claimed to be due Irving Robins, respondent's father, for money advanced to the respondent during her separation from petitioner. The petitioner argues that there is no evidence that a loan rather than a gift was made of this money and that if the money was, in fact, borrowed, that this was a loan for which respondent was solely responsible. For support of his latter argument, the petitioner points out that during the time in which the alleged loan was made, he and his wife were barred by order of court from incurring any debts which the other party would become legally obligated to repay. After reviewing the record, we find petitioner's argument to be well taken. Respondent testified at the trial that she signed no note regarding the money advanced to her by her father, nor did they reach any agreement concerning the repayment of the money. She did testify, however, that she would repay the money. During this period, it should be noted that the petitioner paid to respondent approximately 50% of his income for temporary maintenance and support. Additionally, although respondent was able to work 40 hours a week and could have worked for her father for that number of hours a week, she chose to work only 22 hours a week. Under these facts it is unclear whether a loan existed between respondent and her father or if a loan did exist, whether petitioner should be held jointly liable on the debt. In light of the limited amount of funds available to the parties after the payment of other debts, we find that the trial court abused its discretion in requiring payment of Irving Robins from the house proceeds.

■■ Our review of the record discloses the fact that a second notice of appeal was filed from a June 22, 1978, order of the court concerning the availability of attorneys fees during the pendency of this appeal. As this issue was never briefed by the parties, the appellant has waived consideration of this issue before this court. Ill. Rev. Stat. 1977, ch. 110A, par. 341(e)(7); *People ex rel. Resnik v. Curtis & Davis, Architects and Planners, Inc.* (1978), 58 Ill. App. 3d 28, 373 N.E.2d 772.

For the above reasons the order of the circuit court of Cook County is reversed in part and affirmed in part.

Reversed in part and affirmed in part.

GOLDBERG, P. J., and O'CONNOR, J., concur.