ALFRED PAUL ROSCHE, JR., Plaintiff-Appellant, v. GAYLE ELIZA-
BETH ROSCHE, Defendant-Appellee.

Fifth District   No. 5—86—0794

Opinion filed December 4, 1987.

Gerald J. McGivern, of Wiseman, Shaikewitz, McGivern, Wahl, Flavin, Hesi & Hale, P.C., of Alton, for appellant.

Rosenberg, Bickes, Johnson & Richardson, of Decatur (Jeffrey D. Richardson, of counsel), for appellee.

PRESIDING JUSTICE KARNS delivered the opinion of the court:

A judgment of dissolution of marriage was entered for Alfred Paul Rosche, Jr., and Gayle Elizabeth Rosche on July 11, 1979. On January 10, 1986, Mr. Rosche filed an amended petition requesting termination of maintenance pursuant to section 510(b) of the Illinois Marriage and Dissolution of Marriage Act (hereinafter IMDMA) (Ill. Rev. Stat. 1985, ch. 40, par. 510(b)), modification of maintenance pursuant to section 510(a) of the IMDMA (Ill. Rev. Stat. 1985, ch. 40, par. 510(a)), and a determination of child support and educational expense payments to be paid by Mrs. Rosche for their handicapped adult child. On May 19, 1986, Mr. Rosche filed a second amended petition requesting reimbursement for one-half of the college expenses for their two children.

The trial court granted defendant's motion for summary judgment on the modification of maintenance count, ruling that as a matter of law the judgment of dissolution precluded modification. After considering the evidence, the trial court also denied the three remaining counts of plaintiff's petition. Plaintiff appeals.

Alfred Paul Rosche, Jr., and Gayle Elizabeth Rosche were married on March 21, 1959. The marriage produced two children, Alfred Paul Rosche III, born on March 25, 1962, and Charles David Rosche, born on February 20, 1965. Charles was born with cerebral palsy. On August 1, 1977, Mr. and Mrs. Rosche became separated and a judgment of dissolution was entered on July 11, 1979. The separation and property settlement agreement, which was incorporated into the judgment, granted Mrs. Rosche the marital residence along with certain other assets, $400 per month in spousal maintenance, and $200 per month per child for support of each of their two minor children, such support for Alfred Paul to terminate upon his graduation from high school.

On January 10, 1986, Mr. Rosche filed a three-count petition requesting termination or modification of spousal maintenance payments and to set child support and educational payments for their handicapped child. Count I of his petition requested termination of maintenance payments pursuant to section 510(b) of the IMDMA, alleging that Mrs. Rosche was cohabiting with a man on a resident, continuing conjugal basis. Section 510(b) provides:

"Unless otherwise agreed by the parties in a written separa-

tion agreement set forth in the judgment or otherwise approved by the court, the obligation to pay future maintenance is terminated upon the death of either party, or the remarriage of the party receiving maintenance or if the party receiving maintenance cohabits with another person on a resident, continuing conjugal basis." Ill. Rev. Stat. 1985, ch. 40, par. 510(b).

Count II of Mr. Rosche's petition requested modification of maintenance pursuant to section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1985, ch. 40, par. 510(a)), which states:

"Except as otherwise provided in paragraph (f) of section 502, the provisions of any judgment respecting maintenance or support may be modified *** only upon a showing of a substantial change in circumstances." (Ill. Rev. Stat. 1985, ch. 40, par. 510(a).)

Section 502(f), dealing with separation agreements, provides:

"Except for terms concerning the support, custody or visitation of children, the judgment may expressly preclude or limit modification of terms set forth in the judgment if the agreement so provides." (Ill. Rev. Stat. 1985, ch. 40, par. 502(f).)

In this case, both the separation agreement, which was incorporated into the judgment, as well as the judgment itself, expressly precluded modification of maintenance. Paragraph 9 of the separation agreement stated:

"Husband and wife agree pursuant to section 502(f) of the Illinois Marriage and Dissolution of Marriage Act that any judgment of dissolution of marriage which may be entered shall preclude modification of the terms of this agreement other than for the education of the children ***."

The judgment of dissolution also provided for nonmodification of maintenance, stating that:

"This judgment shall not be modified nor shall the separation and property settlement agreement of the parties except by consent of the parties in writing or except by a further order of this court if required for future educational needs of the children after reaching majority, or except by operation of law."

Mrs. Rosche moved for summary judgment on counts I and II of the petition, arguing that the judgment of dissolution, which incorporated the separation agreement, precluded termination or modification under either section 510(a) or section 510(b). She argued that the language providing "unless otherwise agreed by the parties in a written separation agreement" in section 510(b) and "[e]xcept as other-

wise provided in paragraph (f) of section 502" of section 510(a) allowed the parties to preclude termination or modification of maintenance in a separation agreement and that the separation agreement in this case did so.

The trial court granted Mrs. Rosche's motion for summary judgment as to count II (modification of maintenance based on a substantial change in circumstances), ruling that the parties' stipulation in the separation agreement that the maintenance provision should not be modified precluded any modification based on a section 510(a) substantial change of circumstances argument. The trial court denied Mrs. Rosche's motion for summary judgment as to count I (termination of maintenance because of cohabitation), however. The trial court reasoned that section 510(b) provided three things that would terminate maintenance unless expressly otherwise agreed upon by the parties: (1) death of either party, (2) remarriage of the party receiving maintenance, or (3) cohabitation by the party receiving maintenance on a resident, continuing conjugal basis. Here, the parties agreed in paragraph 5 of the separation agreement that maintenance would terminate upon remarriage. Paragraph 5 did not say, however, that maintenance would terminate *only* upon remarriage. Thus, the trial court reasoned, maintenance could still terminate upon a showing of the death of either party or cohabitation by Mrs. Rosche on a resident, continuing conjugal basis as a "matter of law" as provided in the judgment.

Mr. Rosche introduced evidence that Mrs. Rosche and her friend had taken numerous trips together, dated on a regular basis, and that his car was seen overnight at Mrs. Rosche's apartment. The trial court concluded that such evidence implied a dating relationship and not a *de facto* marriage and found that there was no resident, continuing conjugal relationship. Based on this finding the trial court denied count I of Mr. Rosche's petition.

Count III of Mr. Rosche's petition requested the court to determine a level of child support to be paid by Mrs. Rosche for their disabled adult child, Charles, and to order Mrs. Rosche to pay all of Charles' educational and tutorial expenses. The trial court found that the evidence was conflicting as to the ability of Charles Rosche to support himself; that Charles' grandfather, Alfred Paul Rosche, Sr., not his father, was the one who had been supporting Charles; and that Mr. Rosche had not shown that Charles Rosche was unemployable and incapable of supporting himself. Based on these findings, the trial court denied count III of plaintiff's petition.

On May 16, 1986, Mr. Rosche filed a second amended petition

adding count IV, which requested the court to order Mrs. Rosche to reimburse Mr. Rosche for one-half of the sums provided by him for college expenses for their two children. The only evidence introduced by Mr. Rosche to support his position was some cancelled checks he claimed were for college expenses and a $14,000 promissory note to his father, Alfred Rosche, Sr., allegedly for money given by the grandfather to Alfred Paul III for his college expenses. The trial court found that there was no evidence showing that the expenses of Alfred Paul III were necessary or even reasonable college expenses, no evidence that Mr. Rosche had ever asked Mrs. Rosche to contribute to Alfred Paul III's educational expenses, and that Alfred Paul Rosche, Sr., had paid most of Alfred Paul III's educational expenses. Based on this lack of evidence, the trial court denied count IV of Mr. Rosche's petition. The court further found as an additional ground for denial that Mr. Rosche's petition for contribution for educational expenses was untimely.

■ Mr. Rosche's first argument on appeal is that the trial court erred in ruling as a matter of law that the provision of the settlement agreement pertaining to periodic maintenance was nonmodifiable because the judgment of dissolution provides that the judgment may be modified "by operation of law." Section E of the judgment of dissolution states:

> "E. This judgment shall not be modified nor shall the separation and property settlement agreement of the parties except by the consent of the parties in writing or except by a further order of this court if required for future educational needs of the children after reaching majority, or *except by operation of law*." (Emphasis added.)

Mr. Rosche argues that the phrase "by operation of law" was an express reservation by the court of the power to modify the judgment pursuant to section 510(a) of the IMDMA and that the court therefore erred in granting summary judgment.

We do not believe that the phrase "by operation of law" referred to section 510(a) of the IMDMA, but only section 510(b), which was the conclusion of the trial court. At the time the judgment of dissolution was entered, section 510(b) did not contain the "[u]nless otherwise agreed by the parties" introductory clause, but simply stated that the court shall terminate maintenance in the event of death, remarriage, or residing on a conjugal basis. On its face, the statute appeared to operate automatically upon one of the three listed events and did not appear to permit the parties to agree otherwise. We believe this is what the phrase "by operation of law" referred to.

In 1982, section 510(b) was amended to include the introductory clause, "unless otherwise agreed by the parties in a written separation agreement set forth in the judgment or otherwise approved by the court," which is similar to the introductory language of section 316(b) of the Uniform Dissolution of Marriage Act. Several courts had interpreted the original omission of the introductory clause to mean that prior to 1982, the terminating events of section 510(b) were mandatory regardless of any agreement to the contrary, which leads us to conclude that the 1979 decree at issue used the phrase "by operation of law" to refer to the events in section 510(b).

Our supreme court later rejected the idea that the events listed in section 510(b) were mandatory before the 1982 amendment in the case of *In re Marriage of Kozloff* (1984), 101 Ill. 2d 526, 463 N.E.2d 719. In *Kozloff*, the court held that an agreement precluding modification except for the death of the wife could not be modified because of her remarriage, even though it was entered into before the 1982 amendment of section 510(b), reasoning that the 1982 amendment was not a change in the law, but merely a clarification as it previously existed. *Kozloff*, 101 Ill. 2d at 532-34, 463 N.E.2d at 722-23.

Mr. Rosche argues that the phrase "by operation of law" in the judgment of dissolution supersedes the preclusion of modification of maintenance contained in the written separation agreement under the doctrine of merger. Contrary to Mr. Rosche's contention, we do not find the judgment and separation agreement contradictory and we reject this argument, the effect of which would be to render the non-modification provision of the agreement meaningless.

■ Mr. Rosche's second argument is that the trial court's finding that Mrs. Rosche was not cohabiting on a resident, continuing conjugal basis was against the manifest weight of the evidence. The trial court found, *inter alia*, that Mrs. Rosche and her friend dated other people as well as each other, that they took trips separately as well as together, that they maintained separate residences, and that they did not commingle assets.

Mr. Rosche cites several cases in which the court found that the parties in question were cohabiting on a resident, continuing conjugal basis, but in each case there was evidence showing that the parties resided together for some period of time in a manner indicative of a *de facto* husband and wife relationship. While no Illinois cases have stated this explicitly, our courts have generally looked to those facts which would lead a reasonable observer to believe they were husband and wife. (See *In re Marriage of Sappington* (1985), 106 Ill. 2d 456, 456 N.E.2d 376; *In re Marriage of Reeder* (1986), 145 Ill. App. 3d

1013, 495 N.E.2d 1383; *In re Marriage of Stanley* (1985), 133 Ill. App. 3d 963, 479 N.E.2d 1152.) The trial court's finding in this case that the relationship implied more of a dating relationship and not a *de facto* marriage is not against the manifest weight of the evidence and we find no error in the court's holding that Mr. Rosche failed to prove cohabitation.

■■ Mr. Rosche also argues that the trial court erred in ruling that Mrs. Rosche was not obligated to pay post-majority child support. Based on the conflicting evidence as to Charles' ability to support himself, the trial court found that Charles was not disabled such that he was unemployable and incapable of supporting himself.

To support his contention that Charles is incapable of supporting himself, Mr. Rosche relies primarily on two facts. First, according to the testimony of Dr. Roger McFarlin, Charles' physician, Charles was permanently disabled and unemployable, and second, the fact that Charles flunked out of college as a result of his disability. In his own testimony, however, Charles contradicted Dr. McFarlin on several points, including testimony that he worked out on weight machines and swam laps at the local YMCA on a daily basis, things Dr. Mc-Farlin said Charles could not do. Charles also stated that he had not tried to find work, instead spending his time "goofing around with his friends." He testified he would not have flunked out of college had he applied himself.

The evidence also indicates that at the time of the hearing, Charles was not living with either parent, but in an apartment in Springfield with two roommates where he did his own laundry and cleaning and managed his own financial affairs.

Based on the conflicting nature of the evidence, the trial court's finding that Mr. Rosche had failed to prove that Charles was unemployable and incapable of supporting himself was not against the manifest weight of the evidence and the court did not err in denying Mr. Rosche's request for post-majority child support for Charles Rosche, a request not joined in by Charles.

■■ Finally, Mr. Rosche argues that the trial court erred in denying Mr. Rosche's petition for reimbursement of college expenses of the adult children. Mr. Rosche maintains that he incurred $4,000 in expenses while Charles was at Southern Illinois University and $60,000 in expenses while Alfred Paul III attended school in California. Mr. Rosche also maintains that Mrs. Rosche contributed nothing to the education of either child. The trial court denied Mr. Rosche's petition based on lack of evidence as to the factors set out in section 513 of the IMDMA and because the petition was untimely filed.

Section 513 of the IMDMA authorizes the court to provide for the educational needs of minor or adult children in the judgment of dissolution. In making such an award, the court "shall consider all relevant factors which shall appear reasonable and necessary, including:

(a) The financial resources of both parents.

(b) The standard of living the child would have enjoyed had the marriage not been dissolved.

(c) The financial resources of the child." Ill. Rev. Stat. 1985, ch. 40, pars. 513(a), (b), (c).

No evidence was introduced regarding the financial resources of the parents at the time the children were in college, the standard of living either child would have enjoyed had the marriage not been dissolved, or the children's financial resources other than Charles' current income and expenses. The evidence that was introduced indicates that most of Alfred Paul III's educational expenses were paid by his grandfather and that Mrs. Rosche did contribute $9,067.75 to Charles' education while he was at Brehm Academy. Given this evidence and the lack of evidence as to the section 513 factors, we conclude that the trial court did not err in ruling that Mr. Rosche failed to sustain his burden of proof under section 513 of the IMDMA.

The court also denied this part of Mr. Rosche's petition as being untimely. Mr. Rosche had petitioned the court in 1979 to modify the judgment of dissolution to provide for the children's college expenses. At that time the court denied his request but continued the matter until such time as Mr. Rosche introduced evidence as to expenses actually incurred in providing the children with an education. The present petition was filed in 1986, well after both children were out of school. Given the length of time that has elapsed between the court's initial order and the filing of the present petition, we believe the trial court was correct in ruling Mr. Rosche's request to be untimely.

For the aforementioned reasons, the judgment of the circuit court of Montgomery County is affirmed.

Affirmed.

HARRISON and LEWIS, JJ., concur.