*In re* MARRIAGE OF ROBERTA M. HARSY, n/k/a Roberta M. Vancloostere, Petitioner-Appellee, and ROBERT E. HARSY, Respondent-Appellant.

Fifth District   No. 5—88—0474

Opinion filed January 18, 1990.

J. Mark Maclin, of Du Quoin, for appellant.

Mary Lou Rouhandeh, of Feirich, Schoen, Mager & Green, of Carbondale, for appellee.

PRESIDING JUSTICE LEWIS delivered the opinion of the court:

Respondent, Robert E. Harsy, appeals the circuit court's post-decree judgment in which the court ordered the respondent to establish a $10,000 individual trust for each of his two minor children for the purpose of paying their college expenses and denied the respondent's petition for a reduction of his child support payments. The respondent's appeal only concerns the validity of the court's order directing the establishment of the two trusts.

The respondent and the petitioner, Roberta M. Harsy, n/k/a Roberta M. Vancloostere, were married on June 8, 1974. Two children resulted from the marriage: Darren, born on February 19, 1976, and Adrienne, born on June 29, 1979. The parties were divorced on April 19, 1983, and in the divorce decree, the petitioner was awarded the custody of the two minor children and the respondent was ordered to pay the petitioner child support in the amount of $350 per month per child and to pay maintenance in the amount of $600 per month for 24 months.

Following entry of the divorce decree in April 1983, and until the time of the present dispute between the parties, numerous petitions were filed for post-decree relief. In June of 1983, the respondent filed a petition for the reduction of his child support payments and the elimination of his maintenance payments. Subsequently, the circuit court denied the respondent's request for reduction of his child support payments, but because the respondent had purchased the marital home from the petitioner, the court granted the respondent's request that he no longer be required to pay the petitioner maintenance.

The next matter considered by the circuit court was the petitioner's petition for rule to show cause filed on June 20, 1984, in which the petitioner requested that the respondent be held in contempt of court, as he was in arrears in his child support payments. Before a hearing was held on the petitioner's petition, the respondent filed a second petition for a reduction of his child support payments. The court, in its order of July 17, 1984, found that the respondent was in contempt of court as he was arrears in his payment of child support and ordered the respondent to pay the petitioner $1,757.25 for child support arrearages and to pay $405 for her attorney fees. The court denied the respondent's petition for modification of his child support payments.

On April 28, 1987, the petitioner filed a petition for educational expenses in which she requested that the respondent be ordered to set up a fund for the two children, then 11 and 7 years of age, for their college expenses. She also filed a petition to remove the children from the State and a petition for an increase in child support. Shortly thereafter, the respondent filed a petition for reduction of child support and a petition for a change of the children's custody; however, the circuit court dismissed the respondent's petition for reduction of child support with prejudice on July 9, 1987, on the petitioner's motion, finding that the respondent had not presented in his petition any change of circumstances warranting the petition since his last petition for modification of his child support in July 1984. Another petition for reduction of child support was filed by the respondent on October 16, 1987, and this petition, as well as the other petitions filed by the parties, was considered by the court on December 22, 1987.

As a result of the hearing on December 22, 1987, the court granted the petitioner her request to remove the children from the State, but denied her petition for an increase in child support and for college expenses for the children. The court found that it was too early to determine the need for the college expenses. The court denied the respondent his request for a change in the custody of the children, granted his request to modify his child support payments, and reduced the respondent's child support payments from $350 per month per child to $275 per month per child.

The petitioner filed her next petition on February 2, 1988. In this petition she sought an increase in child support and she also asked that a trust fund be established to provide for the minor children's future college expenses. The respondent then filed a petition for reduction of child support. These petitions were considered on February 22, 1988, and after hearing the evidence, the court denied the respondent's petition for reduction of child support and denied that portion of the petitioner's petition which sought an increase in child support. The court granted the petitioner's request that trust funds be established for the children for their future college expenses, and it is this order which is the subject of this appeal.

On appeal, the respondent argues that the circuit court's order directing the respondent to establish two trust funds for his minor children for the payment of their future college expenses was an abuse of discretion. The respondent argues that the court's order was erroneous for three reasons: First, the evidence did not reveal that the establishment of the trust funds was necessary to protect the interests of the children. Second, there was insufficient evidence presented to

determine the educational needs of the minor children beyond their age of majority. Third, the trusts ordered by the court were invalid since the trusts extended the respondent's obligation of support beyond the children's minority and resulted in the respondent making an *inter vivos* gift to adult children.

The circuit court's order establishing the trust funds for the parties' children stated as follows:

> "That plaintiff's Petition for Modification be and the same is hereby granted, and defendant is hereby ordered to establish a trust fund in the principal sum of $10,000.00 for Darren Harsy and a trust fund in the principal sum of $10,000.00 for Adrienne Harsy, both such trusts to be administered by a corporate trustee of defendant's choice, the principal sums to be held in trust until he or she attains the age of eighteen (18). Upon attaining the age of eighteen (18), the corporate trustee shall have full discretionary power to utilize the income and principal for the child's educational purposes. Payments shall be made directly to the child.
>
> If either child does not need the trust funds or wish to use the trust funds for higher educational purposes, the trust shall terminate upon the child attaining the age of twenty-one (21) and the remaining proceeds shall be distributed by the trustee to the child."

Section 503(g) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 503(g)) permits a court, in its discretion, to establish a separate fund or trust for the minor children of divorced parents, if such a trust is necessary to protect and promote the best interests of the children. Section 513 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 513) further grants a circuit court the discretion to extend a parent's obligation for support of his or her children beyond their minority when that support is for educational purposes. Section 513 provides that a court may make provision for the children's educational expenses whether the child is of minor or majority age. Clearly, when these two sections of the statute are read together, a court does have the discretion to order the establishment of a trust for the children's future educational expenses while they are of minority age. However, to do so, both the statute and case law require that a trust can only be established if there is evidence showing a need to protect the interests of the children. (Ill. Rev. Stat. 1987, ch. 40, par. 503(g); *Atkinson v. Atkinson* (1981), 87 Ill. 2d 174, 429 N.E.2d 465; *In re Marriage of Pickholtz* (1988), 178 Ill. App. 3d 512, 533 N.E.2d 529.)

Section 503(g) also demands a showing that the parent is unwilling or unable to make direct payments of support. *In re Marriage of Pickholtz* (1988), 178 Ill. App. 3d 512, 533 N.E.2d 529.

From the foregoing authorities, we must first determine if the evidence demonstrated some need for the protection of the children's best interests thereby justifying the establishment of the trust funds. At the hearing on dissolution, child custody and property settlement held on January 19, 1983, the petitioner testified that she was a registered nurse and that during the marriage she had worked only part time in order to take care of the parties' minor children. She also testified that the respondent had voiced sentiments during their marriage that education was a waste of time, and since he was able to make more money without a formal education than persons with such an education, that an education was unnecessary.

At that same hearing, the respondent testified that he had been employed as a coal miner for 12 or 13 years for Consolidation Coal Company, and that his salary for the past three or four years had averaged over $25,000 per year. In addition, since before the parties' marriage in 1974, the respondent had also farmed approximately 1,000 acres, including land owned by his father and his aunt, in partnership with his brother Jerry. Various exhibits admitted into evidence revealed real estate owned by the respondent and his debts. The farmland in which the respondent had an ownership interest as of August 1982, was as follows: two acres owned by the respondent; 331 acres owned by the respondent and his brother Jerry Harsy; and two tracts of farmland of 80 acres each which were held in the name of the respondent and his three brothers. As of September 1982, the appraised value of the respondent's property, including the marital home, totalled approximately $294,000; however, the debts on the real estate owned by the respondent totalled approximately $217,500. Additionally, the respondent and his brother Jerry also had a loan of over $60,400 on their farm equipment on which they paid annual payments.

At the hearing held on December 22, 1987, the petitioner testified that she was a registered nurse and was employed in the emergency department of Carbondale Memorial Hospital. Her income from 1983 through 1986 was $22,183.67, $23,757.93, $12,535.76, and $24,071.55 respectively. The drop in her income in 1985 to $12,535.76 was due to a motorcycle accident in which she sustained injuries disabling her from work for a period of time. However, she did receive a settlement of $33,000 for the accident. She also testified that she had set up a bank account for her children's future college expenses and that she

regularly deposited funds in this account for this purpose.

The respondent testified that in 1982, he earned $25,315 at the coal mines, but that he sustained a $17,455 loss for his farming income that year. Then, on December 20, 1983, the respondent suffered an accident at the coal mines, and he had not worked there since that time. The respondent had received workers' compensation benefits on a weekly basis but these benefits were discontinued in September 1987. In April 1987, he received a partial settlement of $127,000 for his accident. Although he received this settlement, the respondent testified and produced cancelled checks showing that he spent $131,494 to pay off some of his debts. The debts he repaid were the payment of a loan advanced against his future soybean crop; the payment of property taxes and a house payment on the marital home which he now owned; the payment of his attorney fees; payments on several notes held by the bank; payment of a note owed to his brother Jerry Harsy; and payment to his father for a loan made so that the respondent could purchase a grain bin. In addition, the respondent purchased some equipment from Vergennes Equipment and a new car. The respondent admitted that even with paying off the $131,494 in debts, he still owed $118,571.20, so that prior to paying off the $131,494, he had owed approximately $250,000.

The respondent testified that since he can no longer work in coal mining because of his accident, he planned to work as a farmer full time and had done so from 1984 until the present. As a full-time farmer, the respondent did not believe that he would have sufficient income to pay the $350 per month per child that he was required to pay as child support. After hearing this evidence, the circuit court reduced the respondent's child support payments to $275 per month per child, but denied the petitioner's request that the respondent be required to set up a separate fund to be be used for the parties' children's future college expenses.

At the hearing held on February 22, 1988, the respondent testified that since the hearing of December 22, 1987, he had received another settlement for his mining accident in the amount of $75,000 of which he retained $50,000 after the payment of his attorney fees. Of the $50,000 he received, he had approximately $8,000 or $9,000 remaining, as he had used the money to pay $17,000 on a loan at a bank and to pay $20,000 to his mother and father on a loan from them which the respondent had used to pay a house note and child support. In addition to the $50,000 settlement payment, the respondent anticipated receiving his last settlement payment of $60,000 soon. Although he had not received this money, the respondent stated that he had

made a real estate deal to buy more farmland with these proceeds.

Based on the foregoing evidence, the circuit court directed the respondent to set up two $10,000 trust funds for his children's future post-high school educational needs. We find that the evidence presented established that there was a necessity for the trust funds to protect the interests of the minor children with regard to their future educational needs. The evidence revealed that the respondent was of the opinion that further education was not something to be valued, and because of his opinion, it can be inferred that he would not take measures to assure that there would be funds available for this purpose. Additionally, since the respondent was no longer able to work as a coal miner due to his accident in 1983, his opportunity to have a relatively stable income was greatly reduced. It is also evident that while the respondent was land-rich, he was also capital-poor, and that he kept his real estate encumbered with debt. This circumstance did not indicate that the funds for the children's educational needs would be readily available when they became needed. We also note that the respondent had not saved any of the approximately $170,000 which he had already received as settlement payments for his accident, but that he quickly spent those funds in less than a year's time, and that he made plans to spend the remainder of the settlement which he had not yet received.

It is also relevant to our consideration that the respondent indicated that he did not believe he was able to pay his child support payments. There was evidence in the record that the respondent had upon one occasion been held in contempt of court for failing to pay his child support as ordered by the court, which indicated that the respondent had either been unable or unwilling to pay. As we noted earlier, evidence of inability or unwillingness to pay has been held to be required to show the necessity of the establishment of a trust for support of minor children. (*In re Marriage of Pickholtz* (1988), 178 Ill. App. 3d 512, 533 N.E.2d 529.) The foregoing evidence indicated that the establishment of the trust funds for the children's future educational needs was necessary to promote and protect the minor children's interests, and that the court did not abuse its discretion when it so ordered.

The respondent's next argument is that the court's order directing the establishment of the two trusts was an abuse of discretion because the circuit court failed to consider the factors of section 513, and because there was insufficient evidence at this time to show what the children's future needs for their college expenses would be. The factors which a circuit court is to consider when making provision

for a child's educational needs are set forth in section 513. That section provides that the circuit court must consider the financial resources of both parents, the standard of living the child would have enjoyed but for the dissolution of the marriage, and the child's financial resources. (Ill. Rev. Stat. 1987, ch. 40, par. 513.) In our consideration of the respondent's previous argument, we have extensively set forth the evidence presented at the various hearings. That evidence revealed that the financial resources of both parents and the standard of living the children would have enjoyed had the parties not obtained their divorce was before the court when it made its determination, and we have no reason to doubt that the court did not consider this information when it entered its order.

The respondent also argues that section 513 requires the court to consider all relevant factors which appear reasonable and necessary. The respondent cites the cases of *In re Support of Pearson* (1986), 111 Ill. 2d 545, 490 N.E.2d 1274, *Rosche v. Rosche* (1987), 163 Ill. App. 3d 308, 516 N.E.2d 1001, and *Ingrassia v. Ingrassia* (1987), 156 Ill. App. 3d 483, 509 N.E.2d 729, to support his argument and to assert that factors such as where the child should attend college, what the attendant costs for this schooling are, how long this education will take, what income the child may have, and what aptitude the child may have for higher education are to be the reasonable and necessary factors a court must consider in making its determination of a child's need for educational expenses. The cases cited by the respondent can be distinguished from the case at bar and are not applicable, as in each of those cases, the children were already of majority age and these factors were readily available. The evidence before the court in this case indicates that it considered all the relevant factors that were reasonable and necessary at the time the court's order establishing the trusts was entered.

Further, we find that the court could impose a trust for future expenditures for the children's college educations even though there was no evidence that the children would even attend college upon becoming of age to do so. Since the statute allows for a court to make provision for a child's college expenses, even though the child is still a minor, it is apparent that there will be occasions in which a court makes provision for a child's college expenses and that evidence of the factors of what school, how much and so on will often be lacking at that time. (Ill. Rev. Stat. 1987, ch. 40, par. 513.) The purpose of the statute is, in part, to assure that the funds will be available if the need arises. Clearly, if the child has no need or a lesser need for the provision for educational expenses when he or she reaches college

age or if the child's need is greater than that provided for, a modification for these expenses can be sought by either parent from the court and an adjustment to accommodate that change can be made at that time.

We lastly consider the respondent's argument that the trusts are invalid because the trusts extend his obligation to support his children beyond the age of majority, and because he is required to disburse the trust proceeds to the children upon termination of the trusts, thereby ordering the respondent to make an *inter vivos* gift to adult children as part of a divorce decree. In support of this argument the respondent cites *In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488, and *In re Marriage of Raski* (1978), 64 Ill. App. 3d 629, 381 N.E.2d 744.

Initially, we note that the respondent's argument that the trusts are invalid because the trusts extend his obligation to support his children beyond the age of their minority is without merit. Educational expenses are the exception to the general rule that a parent's responsibility to support his children terminates upon emancipation of the children. (*In re Marriage of Olsher* (1979), 78 Ill. App. 3d 627, 397 N.E.2d 488.) Therefore, the respondent is not correct that the trusts are invalid for this reason. However, we do find that the respondent is correct in his argument that the disbursement of the trust proceeds to his adult children upon the termination of the trusts is not allowed. At oral argument the petitioner also agreed that this was correct. Additionally, both the petitioner and the respondent agreed at oral argument that this court has the authority to modify this portion of the court's order. We conclude that the establishment of the trusts was valid and that to strike down the entire trust would not protect or promote the best interests of the minor children, but would deprive them of the necessary funds for their college expenses; therefore, pursuant to our discretionary powers under Supreme Court Rule 366(a) (107 Ill. 2d R. 366(a)), we modify that portion of the circuit court's order directing the disbursement of the principal and income of the trusts to the children upon termination of the trusts. Before we set forth our modification, we note that the monies used by the court for the trusts were the exclusive property of the respondent, as he had received the funds as a settlement for an accident which occurred after the divorce decree had been entered and that the petitioner had no rights whatsoever to these funds. Because of this, we hereby modify the circuit court's order to read as follows:

"That plaintiff's Petition for Modification be and the same is hereby granted, and defendant is hereby ordered to establish a

trust fund in the principal sum of $10,000.00 for Darren Harsy and a trust fund in the principal sum of $10,000.00 for Adrienne Harsy, both such trusts to be administered by a corporate trustee of defendant's choice, the principal sums to be held in trust until he or she attains the age of eighteen (18). Upon attaining the age of eighteen (18), the corporate trustee shall have full discretionary power to utilize the income and principal for the child's educational purposes. Payments shall be made directly to the child.

If either child does not need the trust funds or wish to use the trust funds for higher educational purposes, the trust shall terminate upon the child attaining the age of twenty-one (21) and the remaining proceeds shall be distributed by the trustee to the defendant."

For the foregoing reasons, the judgment of the circuit court of Jackson County is affirmed as modified herein.

Affirmed as modified.

HARRISON and HOWERTON, JJ., concur.