*In re* MARRIAGE OF NANCY L. HOBSON, Petitioner-Appellee, and JOHN A. HOBSON, Respondent-Appellant.

Fourth District   No. 4—91—0235

Opinion filed October 21, 1991.

Harold M. Jennings, of Jennings, Novick, Taseff, Smalley & Davis, of Bloomington, for appellant.

Thomson & Weintraub, of Bloomington (Alan I. Weintraub, of counsel), for appellee.

JUSTICE GREEN delivered the opinion of the court:

On September 6, 1988, the circuit court of McLean County entered a bifurcated judgment dissolving the marriage of petitioner Nancy L. Hobson and respondent John A. Hobson, reserving the remaining issues for a later hearing. Then, on March 22, 1990, the circuit court entered a supplemental judgment of dissolution of marriage which essentially incorporated a stipulation entered into by the parties on January 22, 1990, resolving issues of property distribution, child custody, and child support. Respondent now appeals an order entered by the circuit court on March 4, 1991, allowing petitioner's postdecree petition to modify the supplemental judgment. The court ordered respondent to establish a trust for the purposes of child support, to be funded by $20,000 less certain deductions owed to respondent by petitioner under the terms of their January 22, 1990, stipulation.

The court ordered the establishment of the support trust pursuant to section 503(g) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1989, ch. 40, par. 503(g)), entitled "Disposition of property," which provides:

"The court if necessary to protect and promote the best interests of the children may set aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent child of the parties." Ill. Rev. Stat. 1989, ch. 40, par. 503(g).

On appeal, respondent maintains the circuit court abused its discretion (1) in imposing any trust for the benefit of his children; (2) in failing to impose the manner in which the trust was to be administered or as to his rights in the corpus or residue of the trust; and (3)

in any event, in imposing a trust upon property which the parties' stipulation provided he would receive. We hold the court did not err in establishing a trust but should have prescribed the provisions of the trust in much greater detail.

The January 22, 1990, stipulation resolving issues of property distribution, child custody, and child support provided, in pertinent part: (1) petitioner should be awarded sole custody of the parties' four adopted children; (2) respondent "shall pay to petitioner 40% of his net earnings from either his full-time employment, unemployment, or workers['] compensation temporary payments"; (3) respondent "shall pay to petitioner the sum of $608.40 as and for arrearage on child support between August 15 and October 17th," to be paid within five days of receipt of money owing from petitioner to respondent; (4) respondent shall maintain medical insurance for his children through his place of employment, and pay one-half of noncovered medical expenses incurred by his children; (5) respondent shall maintain a life insurance policy naming his children as beneficiaries; and (6) the marital residence shall be awarded to petitioner, who shall pay respondent $20,000, for his portion of the equity in the marital home, within 30 days of that agreement.

The stipulation further provided that petitioner shall pay respondent one-half of the balance in their joint account at the time of their separation, and within five days of receiving this money respondent shall pay petitioner $1,000 for outstanding marital debts assumed by petitioner.

The supplemental judgment of dissolution of marriage entered by the court on March 22, 1990, approved and adopted the foregoing stipulation and ordered: (1) respondent to pay as child support "a sum equal to 40% of his net take-home pay as it applies to wages, payments in lieu of wages pursuant to the Workers' Compensation Act, and unemployment compensation"; (2) petitioner shall "withhold the sum of $1,608.40 from the lump sum payment of $20,000" referred to in the parties' stipulation; and (3) the court "expressly retains jurisdiction of this cause for the purposes of enforcing all the terms of the supplemental judgment of dissolution of marriage, including all the terms of the stipulation."

Subsequently, petitioner hired new counsel, and on April 6, 1990, within 30 days of the entry of the supplemental judgment, petitioner filed a petition for rule to show cause, alleging respondent had wilfully failed to pay the ordered child support. Additionally, petitioner filed a petition to vacate the supplemental judgment, a petition to

modify the supplemental judgment, and a petition for "Establishment of a Section 503(g) Support Trust."

On July 13, 1990, a hearing was held before Judge Freese, who had not entered the dissolution judgments. Apparently, there was some discussion at the hearing as to whether the court should proceed with the foregoing petitions as a "post-decretal matter," or whether petitioner intended to use the petitions as a means to "reopen the property settlement agreement," in which case Judge Townley, who had entered the dissolution judgments, must hear the petitions. Petitioner's counsel argued that a petition for a section 503(g) trust can be used to modify a prior child support order, but maintained that at the present time petitioner was seeking to modify or vacate a judgment entered within 30 days. Accordingly, the parties agreed to reschedule the hearing before Judge Townley.

On December 17, 1990, a hearing was held before Judge Townley. Evidence was presented and at the conclusion of the hearing the court essentially found that a petition for a section 503(g) trust could not be used to vacate the original supplemental judgment. The court entered its order on the official record sheet, stating:

"Both parties appear with counsel for hearing on petitioner's motion to modify and motion to establish support trust. Counsel for respondent stipulates that the provisions of the supplemental petition for dissolution provide for the respondent to pay 40% of any earned income, unemployment compensation, and temporary total benefits of workmen's compensation as and for child support. Respondent personally confirms that interpretation and based on that petitioner requests no further relief. Hearing held on motion to establish support trust and the Court holds that since the petitioner entered into the marital settlement agreement she may not attack the same for matters which were within her knowledge at the time she entered into the agreement and that any circumstances which have arisen subsequent to the entry of the agreement which may justify the modification of the supplemental judgment must be litigated in a new petition to modify rather than a petition which is attacking the underlying basis for the original supplemental judgment. Motion is denied."

Then, on January 4, 1991, petitioner filed another petition to modify the supplemental judgment which incorporated the previously filed petition for "Establishment of a Section 503(g) Support Trust." The petition to modify the supplemental judgment alleged that "since the entry of the supplemental judgment, there had been a substantial

change of circumstances necessitating the modification of the support provisions," including: (1) the 40% formula for child support payments had "become unworkable and ha[d] led to support abuses"; (2) "[r]espondent has provided inadequate support for the [parties' four adopted children]"; (3) two of the parties' children have "special needs requiring additional funding"; (4) "[r]espondent ha[d] failed to apply monies available to him for the support of the children, instead giving priority to other debts, including attorney's fees and credit cards"; (5) respondent now claims to be "either incapable to perform or unable to locate full or part-time employment and that other compensation benefits have been cut off or terminated"; (6) respondent has failed to pay his share of the children's noncovered medical expenses; and (7) respondent has failed to maintain medical insurance for the children. The petition requested the court to establish a section 503(g) trust to be funded by the $20,000 due to respondent from petitioner and respondent's pending workers' compensation claim and/or settlement.

On January 28, 1991, a hearing was held before Judge Freese on petitioner's petition to modify the supplemental judgment and respondent's petition for rule to show cause filed on January 10, 1991, asking that petitioner be held in contempt for her wilful refusal to tender the $20,000 she owed to respondent, with allowance for a set-off of $1,608.40. At the hearing petitioner voluntarily dismissed the petition for rule to show cause filed on April 6, 1990, against respondent which was not ruled on at the December 17, 1990, hearing. Petitioner conceded there was no evidence of respondent's wilful contempt of the court support order since he had no income from which to pay his support obligation.

Evidence was presented by both parties, and in a written order dated March 4, 1991, the court dismissed respondent's petition for rule to show cause and ordered the imposition of a section 503(g) support trust. The court's order establishing the section 503(g) support trust stated, in part, as follows:

> "The Court has considered the demonstrated history of the failure of Respondent to pay support, his current medical circumstances which suggests [sic] that future payments of support are uncertain, and the substantial evidence of the current medical, emotional, and physical needs of the minor children which support a finding that future and regular support is needed.
>
> In considering Section 503(g) of the Illinois Marriage and Dissolution of Marriage Act and in considering the authority in the Court to provide child support for and on behalf of minor chil-

dren in accordance with the statutory guidelines in Section 505 of the Act, this Court finds that the establishment of a trust in accordance with Section 503(g) is appropriate in light of the evidence presented herein."

The court reserved ruling on additional funding for the trust by contribution from any workers' compensation monies. This is the order which is the subject of this appeal.

The supreme court has passed upon the propriety of an order creating a section 503(d) trust only once. In *In re Marriage of Atkinson* (1980), 82 Ill. App. 3d 617, 402 N.E.2d 831, parties to a divorce proceeding were shown to both be devoted parents of two young daughters whose custody was awarded to the mother. The father had in excess of $1 million worth of nonmarital assets with a reasonable income as a young lawyer and the children were beneficiaries of $70,000 of insurance on the father's life. The trial court ordered the father to pay the mother $261 per week for child support. The court ordered the father to set up a $100,000 trust with income to accumulate and with distribution to be made to the children when the youngest became 23 years old. The father's assets had been reduced somewhat during the marriage as he supported himself, the mother, and later the children while he and the mother were both in college and in law school. The appellate court found no need existed for the establishment of the trust and reversed that portion of the decree. The supreme court affirmed, stating:

"We concur in the appellate court's assessment that the imposition of a section 503(d) trust is 'inappropriate in the absence of evidence showing some need to protect the interests of the children' (82 Ill. App. 3d 617, 627[, 402 N.E.2d 831, 838]) and therefore inappropriately applied to a responsible parent." *Atkinson v. Atkinson* (1981), 87 Ill. 2d 174, 179, 429 N.E.2d 465, 467.

Section 503(d) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(d)), considered by the supreme court in *Atkinson* was the then counterpart of the now section 503(g) of the Act but was not prefaced by the requirement that the trust be necessary "to protect and promote the best interests of the children" (Ill. Rev. Stat. 1989, ch. 40, par. 503(g)). Rather, the former provision stated that the "court may protect and promote the best interests of the children" by providing for a trust. Ill. Rev. Stat. 1977, ch. 40, par. 503(d).

In *In re Marriage of Harsy* (1990), 193 Ill. App. 3d 415, 549 N.E.2d 995, the circuit court allowed petitioner's post-judgment petition requesting that respondent be ordered to establish two section

503(g) trust funds for his minor children for the purposes of paying their future college expenses. The appellate court affirmed the imposition of the trust, but modified the portion of the circuit court's order directing the remainder of the trust be distributed to the children upon termination of the trust.

In *Harsy*, unlike the instant case, evidence was presented showing that the respondent was unwilling to pay his children's future college expenses and had been held in contempt for failing to pay child support. However, in upholding the section 503(g) trust, the appellate court considered it relevant that the respondent's opportunity for future stable income had been greatly reduced due to a work-related accident, and it was unlikely that the funds for the children's future education would be available when needed. The court also noted that the respondent did not believe he would be financially able to meet his child-support obligations.

Recently, the Second District Appellate Court had occasion to pass upon the requirements for a section 503(g) trust in *In re Marriage of Vucic* (1991), 216 Ill. App. 3d 692, 576 N.E.2d 406. There, a dissolution decree established such a trust for the minor children. The father had assets of some substance but was imprisoned. The court reversed, except as to the dissolution, and remanded with directions to reconsider, among other matters, the question of the trust. The appellate court concluded that evidence of the father's incarceration might be sufficient to show his inability to pay but no such findings had been made. The appellate court also held that appointing the mother the trustee of the trust which had assets some of which might be returned to the father upon termination of the trust was error because of her conflict of interest. Thus, in *Vucic* the necessity requirement of section 503(g) was met by the likely inability of the father to make the payments without a showing of unwillingness.

In *In re Marriage of Amato* (1980), 80 Ill. App. 3d 395, 399 N.E.2d 1018, the award of property in a dissolution proceeding was reversed and the cause remanded. The statutory provision for a trust to secure support payments then in force was that applicable at the time of *Atkinson*. At the time of the decree the father was 70 and the mother was 44 and the parties had minor children. The father was unemployed and receiving social security but had large race track and real estate holdings. The appellate court recommended that on remand the circuit court might consider requiring setting up a trust for the children's support. In *Amato*, unwillingness of the parent to pay support was not considered a necessary element for requiring a trust.

■ The supreme court in *Atkinson* spoke first of the need to protect children as the criterion for imposition of the trust in question. The language in regard to the statutory trust provision being "inappropriately applied to a responsible parent" (*Atkinson*, 87 Ill. 2d at 179, 429 N.E.2d at 467) can well be taken to indicate that the order for a trust was inappropriate when imposed on that responsible parent. In any event, language in *In re Marriage of Alltop* (1990), 203 Ill. App. 3d 606, 617-18, 561 N.E.2d 394, 401-02, and *Harsy* (193 Ill. App. 3d at 422, 549 N.E.2d at 999) has indicated that necessity may be shown by either unwillingness or inability of a parent charged with child support to make payment. Both *Vucic* and *Amato* have held that inability to pay is a sufficient ground. For reasons we will explain, we hold the record here showed necessity through the inability of the respondent to pay.

In the instant case, at the January 28, 1991, hearing on the petition to modify the supplemental judgment, petitioner testified as follows: (1) she has been a kindergarten teacher for 23 years; (2) the parties adopted four children during their marriage; (3) two of the children have learning disabilities and one of them was presently seeing a psychiatrist and taking antidepressants; (4) she was under the belief that the parties' stipulation provided that respondent would pay her $1,608.40, for child support arrearages and reimbursement for marital debts when she paid him one-half of the amount of their joint savings account; (5) she did not know, at the time of the entry of the supplemental judgment, that her attorney agreed that the $1,608.40 would be credited against the $20,000 she owed respondent; (6) she paid him one-half of the amount in their joint savings account and respondent never paid her the $1,608.40; (7) she had not yet paid respondent the $20,000; and (8) she placed the $20,000 she borrowed from her mother to pay respondent in her checking account, along with her own paychecks, and spent approximately $8,000 for living expenses.

Petitioner further testified that she has only received two child support payments from respondent since they entered into their January 22, 1990, stipulation. She received a check for $523.75 sometime in June 1990, and another check for $524 shortly after. Petitioner testified the parties' oldest son planned to go to college soon, which would cost approximately $6,830 per year. In addition, another child needed orthodontic work done.

Respondent testified as follows: (1) he injured himself working for Rowe Construction in June 1989; (2) because of the injury he was off work until September 1, 1989; (3) he was fired from Rowe sometime

in October 1989; (4) he believed he was fired from Rowe because he filed a workers' compensation claim, not because of an alcohol problem; (5) he worked for Warning Lights for three days in October 1989; (6) he did not work again until June 1990, when he worked four days; (7) he has not worked since June 1990; (8) he was on public aid and received food stamps; (9) he borrowed money from his brother in order to pay his expenses; (10) he is unable to work because he has arthritis in both knees, a blood clot in his left leg, arthritis in his back and left shoulder; (11) his prospects for future employment are "very, very, slight"; and (12) at the time he entered into the stipulation with petitioner he did not realize he would not be able to work.

Respondent also testified that he had not searched for nonphysical employment, and the last time he looked for a job was in June 1990. Respondent stated he paid all of his share of the parties' joint savings account to his attorney for legal fees. In addition, he stated he had tentative plans to take one of his sons to Jamaica when he received his workers' compensation settlement. Respondent claimed he did not wilfully withhold child support, he just does not have any money.

■■ Here, respondent had made only two payments during the nine-month period between the supplemental decree approving the settlement and the hearing on the petition to modify. This was in conformity to the decree for child support because the payments did constitute 40% of his income but they were totally inadequate to support the children. The $20,000 fund is the only reasonably certain source of support payments. The respondent's financial picture is partially contingent upon settlement by him of a workers' compensation claim and a possible claim for retaliatory discharge. His opportunities for employment are clearly impaired and also at least partially contingent upon his diligence in seeking work. Using the trust fund as a source of child support and giving respondent the maximum incentive to handle the questions of settlement of claims and further work on a basis where the benefits will all be his is reasonable. To condition the chances of the child support being paid upon circumstances which deter respondent's incentive to realize income is counter to the best interests of the children and creates a necessity for the trust.

Section 503(g) of the Act is an added tool available to courts in dissolution proceedings including those where, as here, modification is sought. (*Harsy*, 193 Ill. App. 3d 415, 549 N.E.2d 995; *In re Marriage of Rochford* (1980), 91 Ill. App. 3d 769, 414 N.E.2d 1096.) A sufficient necessity existed here to permit the circuit court, in its discretion, to order the creation of a trust. However, the terms of the trust were

not described with sufficient particularity. The terms were merely stated in these words:

> "The Court further finds that a trust ought to be established through a banking institution with trust powers and that a regular and on-going accounting of any expenditures for the support of the minor children and expenditures for the junior or senior high school education of the minor children ought to be maintained. Further, Petitioner ought to be allowed to seek reimbursement from the trust for Respondent's share of the minor children's non-insured medical or dental expense and an accounting of that reimbursement ought to be maintained."

First, the amount of support to be paid must be redetermined. Under the existing decree that amount is stated to be 40% of respondent's income. The petition to modify alleges this has proved to be unworkable. In *In re Marriage of Wassom* (1988), 165 Ill. App. 3d 1076, 519 N.E.2d 1147, this court held that section 505(a)(5) of the Act (Ill. Rev. Stat. 1985, ch. 40, par. 505(a)(5)) requires child support to be stated in dollar amounts. That provision is still in force (Ill. Rev. Stat. 1989, ch. 40, par. 505(a)(5)). In any event, the 40% provision is unworkable here and has created the situation requiring the trust. A substantial change in circumstances has occurred. On remand, the court shall determine a dollar amount of child support and require any trustee appointed to make regular payments from the fund. The payments need not be limited to income but the court should consider the need for the fund to continue for an extended period in finding the amount of child support.

We recognize the expenses for a trust, funded only by $20,000, when periodic payments are required is high. The court shall name a trustee who shall not be the petitioner. If a proper individual can be found, the court may name an individual trustee but, if the court finds it more efficient or appropriate to name an authorized corporate trustee, it may do so. Reasonable provisions shall be made for payment of the children's reasonable noninsured medical or dental expenses, and for accounting. The order must also provide for termination of the trust upon emancipation of the children and for payment of any residue to the respondent, his heirs, personal representative, or assignees. However, reasonable provisions may be made for college expenses for the children.

■ Respondent's final argument is that section 502(b) of the Act, regarding written or oral settlement agreements, requires the court to give effect to an agreement on the distribution of property, unless the court finds the agreement unconscionable. Here, the court did not

find the parties' stipulation unconscionable; therefore, respondent claims the court cannot negate the parties' agreement and impress respondent's $20,000 in a support trust. Clearly, section 502(b) of the Act does state that the "terms of the agreement, except those providing for the support, custody *** are binding upon the court unless it finds *** that the agreement is unconscionable." (Ill. Rev. Stat. 1989, ch. 40, par. 502(b).) Nonetheless, the court here did not alter the parties' agreement that petitioner shall pay respondent $20,000 for his share of the equity in the marital home. Rather, the court ordered that respondent's $20,000 be put in a trust for the benefit of his children. The petitioner agrees that because of setoffs which we have explained, the amount owed by her to respondent pursuant to the property settlement is less than $20,000. However, petitioner has agreed that if a trust fund for support payments is approved and ordered, she will fund it with the full sum of $20,000 in satisfaction of her responsibility to make payment to respondent.

Accordingly, we vacate the judgment on the petition to modify which is on appeal and remand the cause to the circuit court of McLean County with directions to modify the support order previously entered and to proceed within its discretion and in conformity with this opinion. That court may hold such further hearings, with or without further evidence being taken, as it deems appropriate.

Judgment vacated and cause remanded with directions.

LUND, P.J., and STEIGMANN, J., concur.