*In re* MARRIAGE OF RUTH ANN ANDREW, Petitioner-Appellant, and RAYMOND A. ANDREW, Respondent-Appellee.

First District (5th Division)   No. 1—91—3882

Opinion filed November 5, 1993.

Grund, Nadler & McNish, of Chicago (David I. Grund, of counsel), for appellant.

Kalcheim, Schatz & Berger, of Chicago, for appellee.

JUSTICE COUSINS delivered the opinion of the court:

Ruth Ann Andrew (petitioner) appeals portions of the dissolution of marriage judgment and order rendered by the trial court.

The issues presented for review are: (1) whether the trial court abused its discretion by denying petitioner maintenance; (2) whether the trial court abused its discretion by (a) creating a child support (section 503(g) of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1991, ch. 40, par. 503(g))) trust out of the net proceeds of the sale of the marital residence, (b) by appointing respondent trust administrator, and (c) by awarding petitioner 60% of the remaining net proceeds from the sale of the marital residence assets and 50% of all other remaining assets; (3) whether the trial court's award of $400 per month in child support for the minor child was against the manifest weight of the evidence and, consequently, an abuse of discretion; and (4) whether the trial court's failure to find that Raymond A. Andrew (respondent) dissipated marital property during the last two years of the parties' marriage constituted an abuse of discretion and was against the manifest weight of the evidence.

We affirm.

## BACKGROUND

Petitioner and respondent were married on June 13, 1959. They had seven children: Thomas, born September 9, 1960 (emancipated); William, born August 15, 1964 (attending medical school); Daniel, born January 13, 1966 (attending college); Phillip, born September 30, 1967 (attending law school); Catherine, born February 1, 1970 (attending college); Patricia, born November 9, 1971 (attending college); and Michael, born January 23, 1976 (attending Loyola Academy High School).

During their 32-year marriage, petitioner's role was that of a homemaker, although she received a bachelor's degree in history and worked for a brief time after college.

Respondent, a lawyer by education, was licensed to practice law in New York and California. In addition to maintaining his status as a lawyer, respondent developed a career in corporate management. From 1985 through 1989, he functioned as the chief operating officer of Stalker Corporation, a subsidiary of EAC Industries. By the time respondent left Stalker, he had raised its value from $3 million to $12 million. Although respondent's base salary was $125,000, he received various bonuses. In the spring of 1989, he received a lump-sum cash bonus from EAC. After his employment with Stalker, respondent was self-employed for seven months as a consultant for

Chromoloid Corporation. Respondent's self-employment ended in 1989 when he stopped working. When asked why he stopped working and had failed to obtain employment since November of 1989, respondent testified that he had been depressed and that he had to guard the marital residence.

In 1989, respondent's adjusted gross income was $459,000. In 1988, respondent's adjusted gross income was $861,000. He testified that his approximate 1990 income was between $90,000 and $100,000 and was derived solely from interest and dividends that he earned on family investments.

Petitioner's nonmarital assets acquired from an inheritance from her father consisted of stock and cash in the amount of $30,000 and real estate worth approximately $90,000.

The parties' amassed marital estate consisted of the following:

| | |
|---|---:|
| "Marital Residence located at 2 Kent Road, Winnetka, Illinois | $1,200,000 |
| Bell & Howell Non-qualified Executive Plan as of March, 1991 | 323,000 |
| Stalker/EAC Profit Sharing Plan Massachusetts Mutual as of 1/31/90 | 45,000 |
| Merrill Lynch IRA rollover as of 4/27/90 | 58,000 |
| Merrill Lynch Cash Asset account as of 1/26/91 | 1,002,524 |
| Smith Barney IRA rollover (Bell & Howell Profit Sharing) as of 12/29/89 | 115,000 |
| Smith Barney Cash Asset as of 3/30/90 | 80,000 |
| Horizon IRA (Ruth) as of 3/30/90 | 9,200 |
| PETCO Stock (6,000 shares) | 15,000 |
| Vehicles: | |
| '89 Corsica—Purchased 12/89 | 12,000 |
| '90 Mazda—Purchased 4/90 | 23,000 |
| '85 Ford Arrowstar [sic] | |
| Furniture and Furnishings | Undetermined |
| Promissory Notes from children | 35,000 |
| TOTAL MARITAL ASSETS | $1,917,724 |
| LESS MORTGAGE ON MARITAL RESIDENCE | -$55,000 |
| GRAND TOTAL OF MARITAL ASSETS: | $2,862,724." |

The parties separated on January 2, 1991, when petitioner moved from the marital residence, which was a 6,500-square-foot, eight-bedroom residence, located at 2 Kent Road, Winnetka, Illinois. She moved to a three-bedroom rental townhouse located at One Landmark, Northfield, Illinois.

The trial court entered judgment for dissolution of marriage which provided (1) that the parties were barred from obtaining maintenance from one another; (2) that upon sale of the marital residence, petitioner would be awarded 60% of the remaining net proceeds of the sale and respondent would be awarded the remaining 40% of the net proceeds of the sale; (3) that out of the net proceeds of sale of the

marital residence, prior to any distribution to the parties, the sum of $200,000 was to be put into a trust fund pursuant to section 503(g) of the Illinois Marriage and Dissolution of Marriage Act (the Act) for the support, maintenance and general welfare of the minor child, or any other dependent children of the parties, and out of that section 503(g) trust, the sum of $400 per month was to be disbursed as child support for the minor child; (4) the parties were to split the Bell & Howell retirement plan, 50% to each, pursuant to a qualified domestic relations order; and (5) the parties were each awarded 50% of the liquid assets and IRAs as follows:

"Merrill Lynch Cash Management Account Number 696-79771
Northern Trust Account Number 3NQ-001692
Smith Barney Account Number 016-018449
Smith Barney Account IRA Account Number 016-0183430
Merrill Lynch IRA Account Number 69684820
Citibank IRA
Debts owed by William Andrew and Thomas Andrew."

The trial court further ordered the parties to pay their respective attorney fees and the court reserved attorney fees for Richard Doermer, the attorney for the minor child.

Upon ruling on petitioner's motion for reconsideration, the trial court amended the judgment for dissolution of marriage to provide that respondent was to account to the court on an annual basis for the disbursement of the section 503(g) trust and that at the end of the minor's full-time undergraduate education, the remaining funds were to be disbursed on an equal basis. The trial court denied all other relief requested by petitioner. This appeal followed.

OPINION

On appeal, the decision of the trial court should not be reversed unless it is contrary to the manifest weight of the evidence. *Kokinis v. Kotrich* (1980), 81 Ill. 2d 151, 154, 407 N.E.2d 43.

I

Petitioner contends that the trial court abused its discretion by barring her from seeking maintenance. We disagree.

Section 504 of the Illinois Marriage and Dissolution of Marriage Act governs the granting of maintenance awards. Ill. Rev. Stat. 1991, ch. 40, pars. 504(a), (b); *In re Marriage of Orlando* (1991), 218 Ill. App. 3d 312, 321, 577 N.E.2d 1334.

■ The trial court's maintenance award determination is a matter within its discretion and will not be disturbed on review absent an abuse of discretion or determination that the award was against the

manifest weight of the evidence. (*Orlando*, 218 Ill. App. 3d at 321.) An abuse of discretion occurs when no reasonable person would take the view adopted by the trial court. *Orlando*, 218 Ill. App. 3d at 321.

We stress that the maintenance award pertained to *petitioner's* welfare. In the present case, petitioner's share of the parties' Merrill Lynch cash account gave her $505,000. She also had stocks, an apartment building, and cash from her father's estate valued in the estate at over $192,000. In all, petitioner's holding not counting personal property worth $58,000 was in excess of $1,225,000. Additionally, petitioner's one-half of the marital IRAs, SERP and S.E.P accounts was worth $79,000. Petitioner was also awarded one half of respondent's Bell & Howell supplemental executives retirement plan valued by her expert at $323,300. The Bell & Howell supplemental retirement plan will pay petitioner approximately $1,833 per month starting in less than four years. Petitioner's share of the retirement funds had a total present value of $240,600. As such, to deny petitioner maintenance while allotting her well in excess of $1 million was not an abuse of discretion.

In applying the reasonable person standard of review for determining whether a maintenance award was proper, we hold that a reasonable person would take the view adopted by the trial court. Petitioner should be reasonably able to support and maintain herself without a maintenance award. Hence, the trial court did not abuse its discretion by not awarding petitioner maintenance.

## II

Petitioner contends that the trial court abused its discretion by (1) creating a child support trust out of the net proceeds of the sale of the marital residence which amounted to $200,000, (2) by naming respondent as trustee of the trust, and (3) by awarding petitioner only 60% of the remaining net proceeds of the sale of the marital residence along with 50% of all other remaining marital assets. We disagree.

■ Like a maintenance award, a property division award can be disturbed only upon a showing of an abuse of discretion, and a reviewing court is not justified in substituting its discretion for that of the trial court's. *Orlando*, 218 Ill. App. 3d at 319.

With regard to the section 503(g) trust, petitioner takes issue with the fact that the trial court created a trust out of the initial net proceeds from the marital home, and also because respondent was named as the trust's administrator. Petitioner asserts that the trial court's actions diminished her award and vitiated respondent's support obligation. However,

"[t]he court if necessary to protect and promote the best interests of the children may set aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent child of the parties." Ill. Rev. Stat. 1991, ch. 40, par. 503(g).

Petitioner's counsel requested a section 503(g) trust fund (to be established out of respondent's monies). The minor child's attorney requested a section 503(g) trust fund. Neither party was working at the time of the trial. To ensure the minor child's education and support needs, the trial court instituted a trust. The best interest of the minor child was promoted by setting up this trust fund. Thus, we perceive no abuse of discretion.

Further, the appointment of a fit and proper person to be trustee is a matter largely within the trial court's discretion, even though the general rule is that an interested party should not be appointed trustee of a trust. *In re Marriage of Vucic* (1991), 216 Ill. App. 3d 692, 702, 576 N.E.2d 406.

In *Vucic*, the appellate court reversed and remanded because the trial court ordered a divorced mom to be trustee where the corpus was to be returned to the divorced father upon the trust's termination. Here, however, both respondent and petitioner had an interest in the remainder. A control system was implemented—respondent was to account annually as to the disposition of trust funds—to preclude any wrongdoing. Unlike the facts in *Vucic*, respondent and petitioner's interests were not divergent. Moreover, the record indicated that respondent was a corporate attorney who handled corporate assets as well as household finances.

Adequate safeguards were instituted to ensure proper distribution of trust funds. Hence, the trial court did not abuse its discretion.

Nor does the record support a finding that the trial court abused its discretion by awarding petitioner 60% of the remaining net proceeds of the sale of the marital residence along with 50% of all other remaining marital assets.

The trial court articulated that it had considered all the relevant factors enumerated in section 503 as it pertained to disposition of property, section 504 as it pertained maintenance, and section 505 as it pertained to child support. Nothing in the record indicates that the trial court abused its discretion.

### III

Petitioner contends that the child support award was against the manifest weight of the evidence. We disagree.

Section 505 of the Act provides in part that the duty of support owed to a minor child includes the obligation to provide for reasonable and necessary physical, mental, emotional, and health needs of the child.

■ Petitioner asserts that the $400-per-month award was insufficient. However, she testified to the veracity of an affidavit in which she listed $189 in expenses for the minor child.

The $400-child-support award was not an abuse of discretion because the section 503(g) trust proceeds took care of the minor child's other needs: education, maintenance, and general welfare. The $400 award was in excess of the amount indicated on the affidavit. Thus, the trial court's child support award was not against the manifest weight of the evidence.

## IV

Petitioner contends that the trial court's failure to find that respondent dissipated marital property was an abuse of discretion and was against the manifest weight of the evidence. We disagree.

Specifically, petitioner asserts that the following actions taken by respondent constituted dissipation: (1) respondent stopped working in bad faith when he knew divorce was imminent in order to diminish his income and marital assets; (2) respondent could not account for the use of some marital funds; (3) respondent conveyed stock to adult children; and (4) respondent purchased a 1990 Mazda.

We first note that the trial court did not rule on this matter. During the motion for reconsideration hearing, the trial court stated that it "didn't hear anything about dissipation during the course of the trial." Petitioner asserts, however, that she repeatedly raised the dissipation issue at trial.

A party cannot try his case on one theory in the trial court and on another theory on review. (*In re Marriage of Melton* (1981), 93 Ill. App. 3d 338, 340, 417 N.E.2d 220.) Respondent asserts that the issue was essentially waived because it was not raised at trial.

The issue of dissipation was not raised at the trial level. However, assuming *arguendo* that the issue was raised, we find that the record does not support that respondent dissipated any marital property.

Section 503(d)(1) of the Act provides that in a proceeding for dissolution of marriage, the court shall divide marital property into just proportions considering all relevant factors, including contribution or dissipation of each party in the acquisition, preservation, or depreciation in value, of the marital and nonmarital property including the contribution of the spouse as homemaker or to the family unit. Ill. Rev. Stat. 1991, ch. 40, par. 503(d)(1).

The term "dissipation" refers to the use of marital property for the sole benefit of one of the spouses for a purpose unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown. (*In re Marriage of O'Neill* (1990), 138 Ill. 2d 487, 495, 563 N.E.2d 494; *In re Marriage of Jelinek* (1993), 244 Ill. App. 3d 496, 510, 613 N.E.2d 1284.) Determinations regarding dissipation are matters within the trial court's discretion and may not be disturbed absent a showing of an abuse of that discretion. *Jelinek*, 244 Ill. App. 3d at 510.

■ Respondent testified that he stopped working because he became depressed and also that he felt he had to protect the marital residence. He explained that he bought and liquidated stock based on his view of the company's prospects and that his view of the company's prospects varied from time to time. Respondent transferred stock to two of his children so that they could pay their tuition. Respondent stated in his brief that petitioner was aware that he was paying for at least two of their children's tuition. Further, petitioner received two vehicles (1989 Corsica and 1985 van) to respondent's one (1990 Mazda). Finally, petitioner failed to demonstrate exactly when the marriage suffered from irretrievable breakdown.

The trial court heard all of the evidence and stated that in rendering its dissolution of marriage order and judgment, it considered all the factors enumerated in section 503 as they pertained to disposition of property. The fact that the court mentioned that it did not hear anything about dissipation during the course of the trial suggests to us that it did not find a dissipation of property. Accordingly, we hold that the trial court's ruling was neither against the manifest weight of the evidence nor an abuse of discretion.

Judgment affirmed.

MURRAY and McNULTY, JJ., concur.