*In re* MARRIAGE OF DEBORA D. STEFFEN, Petitioner-Appellee, and GERALD R. STEFFEN, Respondent-Appellant.

Fourth District   No. 4—93—0319

Argued November 16, 1993.—Opinion filed December 9, 1993.

Gordon M. Kinate (argued), of Kinate & Morgan, of Fairbury, for appellant.

G. Edward Murphy (argued), of Reynolds, Murphy & Associates, P.C., of Peoria, for appellee.

JUSTICE GREEN delivered the opinion of the court:

The marriage of petitioner Debora D. Steffen and respondent Gerald R. Steffen was dissolved and the matters of child custody and support resolved by decrees of the circuit court of McLean County entered on February 10, 1981, and April 16, 1981, respectively. The court awarded Debora the custody of the two minor children of the parties, Andrew, then seven, and Vernon, then three, and ordered Gerald to pay $250-per-month child support and to provide medical, dental, and optical insurance for them. The case was before that court on various matters until August 1, 1990, when Debora obtained a judgment against Gerald for past-due child support, medical expenses, and medical insurance in the sum of $17,178. Then, on May 14, 1991, she filed an affidavit for a nonwage garnishment for the amount of the arrearages against the executor of the estate of Gerald's aunt, under whose will Gerald was given a legacy. The executor's answer indicated Gerald was to receive a legacy in that estate, the amount of which was subject to litigation in the circuit court of Livingston County where the estate was being administered. The circuit court of McLean County entered a judgment in garnishment on August 26, 1991, which gave Debora a lien against that legacy.

On June 27, 1991, Debora filed a motion in the McLean County proceedings alleging she had not received money on the judgment for arrearages and requesting the court, pursuant to section 503(g) of the

Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1991, ch. 40, par. 503(g)), to set up a trust fund for the benefit of the two minor children of the parties by providing funds for future child support and medical and education expenses. After an evidentiary hearing, the circuit court entered an order on September 30, 1992, creating such a trust and denying a pending request by Gerald to reduce or terminate the support he was ordered to pay. Various further procedures were followed by the parties culminating in an amended order entered on March 29, 1993, clarifying the previous orders.

Gerald has appealed contending that (1) section 503(g) of the Act permits the court to require the setting up of a trust fund for the children of a dissolved marriage only when the trust is created by the original decree and not, as here, in a post-decree proceeding; (2) the court erred in making a finding, necessary for granting section 503(g) relief, that Gerald had been unwilling or unable to make support payments; and (3) the court erred in refusing to reduce the amount of support payments Gerald was required to make. We affirm.

Section 503(g) of the Act states:

"Disposition of property. ***

* * *

(g) The court if necessary to protect and promote the best interests of the children may set aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependant, or incompetent child of the parties." Ill. Rev. Stat. 1991, ch. 40, par. 503(g).

All of the subsections of section 503, other than subsection (g), operate only when property of the marriage is being initially divided. No case before a court of review, called to our attention, has decided directly whether a section 503(g) trust can be set up after an original decree dividing the property of the parties has been entered. However, various decisions of the appellate court have affirmed section 503(g) trusts created by post-decretal judgments where no objection was made to the post-decretal creation of the trust. *In re Marriage of Hobson* (1991), 220 Ill. App. 3d 1006, 581 N.E.2d 388, *appeal denied* (1992), 143 Ill. 2d 638, 587 N.E.2d 1015; *In re Marriage of Gocal* (1991), 216 Ill. App. 3d 221, 576 N.E.2d 946; *In re Marriage of Harsy* (1990), 193 Ill. App. 3d 415, 549 N.E.2d 995; *In re Marriage of Rochford* (1980), 91 Ill. App. 3d 769, 414 N.E.2d 1096.

The mother in *Hobson* first filed a petition to modify within 30 days seeking to vacate the original judgment. The trial court held that a section 503(g) trust request could not be used to vacate the original

judgment, but that the mother could file a petition to modify the original judgment, which she did. The trial court then granted the petition to modify and created a trust pursuant to section 503(g). Incidentally, the trust in *Hobson* was used for the same purposes as the trust in this case, *i.e.*, for future child support, medical expenses, and educational expenses. This court affirmed the trial court's decision on appeal. Citing *Harsy* and *Rochford*, this court stated that "[s]ection 503(g) of the Act is an added tool available to courts in dissolution proceedings *including those where, as here, modification is sought.*" (Emphasis added.) (*Hobson*, 220 Ill. App. 3d at 1014, 581 N.E.2d at 394.) *Rochford* expressed similar language. *Rochford*, 91 Ill. App. 3d at 779, 414 N.E.2d at 1104.

The only argument presented for limiting the time when a section 503(g) trust may be created to the time of the original property dissolution is based on the fact that every other type of distribution of property described in section 503 of the Act takes place during the initial dissolution of property and not post-decree. However, nothing in the language of section 503(g) indicates that it does not operate post-decree. Citing *Rochford*, an authoritative source has stated: "[h]owever, where the husband has demonstrated his unwillingness to pay child support as ordered by the court, [section 503(g)] provides an appropriate means to guarantee payment *even in post-decree* proceedings." (Emphasis added.) Ill. Ann. Stat., ch. 40, par. 503(g), Supp. to Historical & Practice Notes, at 90 (Smith-Hurd Supp. 1992).

As we will later discuss in more detail, grounds for creating a section 503(g) trust arise when a spouse has failed to make court-ordered child support payments. The existence of this situation is more likely to become apparent post-decree rather than earlier. Thus, the time of a hearing where enforcement of a support order is sought is a very appropriate time to consider such a trust. It can be a useful tool in protecting children's right to support. We hold that the circuit court of McLean County had authority to order the creation of a section 503(g) trust here.

In the case of *In re Marriage of Atkinson* (1981), 87 Ill. 2d 174, 178-79, 429 N.E.2d 465, 467, the court held that for a trust under then section 503(d) of the Act (Ill. Rev. Stat. 1977, ch. 40, par. 503(d)), predecessor to section 503(g) of the Act, a spouse should not be required to set up a trust for children of a dissolved marriage without a showing of the need to do so to protect the children. A need for such protection arises when the obligor spouse is either unwilling or unable to make child support payments. This rule has been followed in *Hobson* (220 Ill. App. 3d at 1014, 581 N.E.2d at 393-94) and *Harsy* (193

Ill. App. 3d at 422, 549 N.E.2d at 348). In another case, the appellate court held that the existence of a substantial arrearage by the obligor spouse is a sufficient showing even though that spouse is not in contempt of court. *Gocal*, 216 Ill. App. 3d at 224-25, 576 N.E.2d at 948-49.

Further discussion of the evidence is necessary to determine whether the basis for imposition of a section 503(g) trust was present here. From the time of the dissolution of the marriage until August 1, 1990, Gerald had paid very little child support to Debora. On that date, she obtained a judgment against him for past-due child support in the sum of $17,178. Gerald had been out of work for most of this time and incarcerated for a narcotic offense for part of the time. Debora learned that Gerald would receive the legacy from the estate of an aunt. After Debora started garnishment proceedings on May 14, 1991, to obtain a lien against Gerald's interest in the aunt's estate, Gerald assigned a partially undisclosed portion of his legacy in the aunt's estate to his father.

The parties have agreed that the determination of Gerald's rights in the aunt's estate, including the question of the effect of Gerald's assignment to his father, shall be decided in the proceedings in the circuit court of Livingston County. That court had allowed Gerald to receive sufficient funds for him to pay off the August 1, 1990, judgment which Debora had obtained for past-due child support and arrearages accruing until the end of November 1991. That money was paid to Debora and, according to her testimony, she used it to pay off old bills and attorney fees. Gerald paid no more support thereafter, remained unemployed and had received an injury which was such that the parties agree that he was unable to work at the time of the entry of the order on appeal. In the meantime, Andrew had reached college age and needed $1,000 to $2,000 additional support for college expenses.

Absent funds from the estate of Gerald's aunt, he is, by his own admission, unable or unwilling to make support payments. He testified that he could not work and had only the likely possibility of social security payments upon which to live. He had not worked for a long time. The record reveals very little concerning the size of the aunt's estate, the amount which Gerald was given, or the strength of Gerald's father's interest arising from the assignment. As Gerald had hindered collection by Debora for child support from his legacy and considering the other evidence, the circuit court of McLean County's finding that Gerald could not or would not pay support was fully supported by the evidence.

■ In the order on appeal in its final form, the court ordered Gerald to pay Debora $4,385 for child support and medical bill arrearages. Additionally, the court ordered the trust be funded with (1) $9,750 for future support at the rate of $250 per month; (2) $8,000 for Andrew's college expenses; (3) $15,000 for Vernon's college expenses; and (4) $5,000 for future medical and insurance expenses. The decree further provided that the foregoing should be done to the degree possible. Because of the uncertainty as to how much Gerald will get from the estate, the wisdom of setting up the trust is somewhat uncertain. Waiting to find what funds would be available might have been wiser. However, upon the record presented, some order for Gerald to turn over to a fiduciary money he might receive from the estate was desirable. The record also indicates a desire upon the parties to set up a program so that its validity could be tested now rather than waiting until the question of what proceeds will be available has been settled. The circuit court did not abuse its discretion in finding the establishment of the trust was in the best interest of the two sons.

■ The question of whether the circuit court erred in denying Gerald's request to modify the order requiring him to pay $250 per month is also complicated by the uncertainty in regard to the money which will be available from the estate. Section 510(a) of the Act provides for modification of child support orders upon "a substantial change in circumstances." (Ill. Rev. Stat. 1991, ch. 40, par. 510(a).) This has been described as meaning that "the conditions and circumstances of the parties" must have "materially changed." (*Waggoner v. Waggoner* (1979), 78 Ill. 2d 50, 55, 398 N.E.2d 5, 8.) In making this determination, the court should look at both the circumstances of the parents and the needs of the children. *Fedun v. Fedun* (1987), 155 Ill. App. 3d 798, 801, 508 N.E.2d 531, 533.

Here, Gerald was unemployed at the time of the original decree which required him to pay $250 per month, and he was unemployed at the time of the present decree. The status of the children, both of whom are or will soon be of college age, is probably such that they are more in need of funds now than when they were younger. Gerald contends that a substantial change has occurred, because originally, he was physically able to work, and now he is not. However, offsetting any change in that regard, which would indicate reduction or elimination of the support payments, is the present potential for Gerald to receive money from the aunt's estate. The determination of the circuit court in regard to the request for modification of support orders will not be disturbed on review unless the decision is an abuse of discre-

tion. (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 296, 483 N.E.2d 1229, 1233; *In re Marriage of Alexander* (1992), 231 Ill. App. 3d 950, 953, 596 N.E.2d 1335, 1337.) The circuit court did not abuse its discretion in refusing to modify the support order under the circumstances then existing.

We affirm the judgment appealed in its entirety.

Affirmed.

KNECHT and COOK, JJ., concur.