*In re* MARRIAGE OF JANET C. WOLFE, Petitioner-Appellee, and STEVE L. WOLFE, Respondent-Appellant.

Second District   No. 3—97—0441

■

Opinion filed August 12, 1998.

■

GEIGER, P.J., dissenting.

Kathleen M. Krist-Krueger, of Law Offices of Larry M. Amoni, P.C., of Aurora, for appellant.

John R. Wimmer, of Downers Grove, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

The respondent, Steve Wolfe, appeals from the February 24, 1997, and May 12, 1997, orders of the circuit court of Du Page County distributing the portion of a personal injury settlement that compensated Steve for lost future wages as marital property and child support. The trial court ordered that 10% of the lost future wages portion of the settlement proceeds be awarded as marital property to the petitioner, Janet Wolfe, and 20% of the lost future wages portion of the settlement proceeds be used to establish a trust fund for the support and benefit of Cassandra Wolfe, the parties' only child. On appeal, Steve argues that (1) the trial court erred in finding that the

settlement proceeds could be considered "income" for purposes of making a child support award; and (2) the trial court erred in determining and calculating the specific award of child support. We affirm in part, reverse in part, vacate in part, and remand the cause for further proceedings.

On July 21, 1993, Janet filed a petition for dissolution of marriage. The parties' only child, Cassandra, was born on October 24, 1990. In her petition, Janet requested custody of Cassandra and an award of child support.

Approximately one year prior to the commencement of the dissolution proceedings, Steve was seriously injured in a work-related accident and, as a result, was no longer able to work. After his injury, Steve began to receive social security disability benefits in the amount of $1,710 per month.

On August 18, 1993, the trial court awarded Janet temporary custody of Cassandra and ordered Steve to pay temporary child support in the amount of $342 per month. This amount represented 20% of Steve's then monthly income of $1,710. On December 20, 1993, Janet filed a petition for an increase in the amount of temporary child support. On February 7, 1994, following a hearing, the trial court entered an agreed order requiring (1) that Janet maintain medical insurance for Cassandra through her employer; (2) that Steve pay 60% of the monthly cost for such insurance; (3) that the parties would equally pay all of Cassandra's medical expenses not covered or reimbursed by insurance; and (4) that the parties would pay equally for all of Cassandra's outstanding medical expenses.

Also on February 7, 1994, the parties entered into an agreed permanent custody order. Pursuant to this order, Janet was granted permanent sole custody of Cassandra and Steve was granted supervised visitation.

On two separate occasions, Janet filed a motion for a rule to show cause against Steve to force his compliance with the trial court's orders. On December 20, 1993, Janet filed a motion for a rule to show cause complaining of Steve's failure to participate in court-ordered "conciliation" sessions with a counselor. On September 15, 1995, Janet again filed a motion for a rule to show cause complaining of Steve's failure to reimburse her for his share of Cassandra's medical insurance and health care expenses.

The cause proceeded to trial on February 1, 1996. On March 16, 1996, the trial court entered a judgment of dissolution. As part of its dissolution order, the trial court ordered (1) that Steve pay Janet $1,717.16 as an arrearage on his support obligations; (2) that Steve pay the sum of $146 per month in child support (20% of his monthly

income at that time); (3) that Steve reimburse Janet for 50% of all medical expenses and insurance premiums; (4) that Steve pay Janet 20% of his $58,526 workers' compensation settlement; and (5) that the trial court would retain jurisdiction to allocate any proceeds received by Steve as a result of his then pending personal injury claim brought pursuant to the Structural Work Act (740 ILCS 150/0.01 *et seq.* (West 1992) (repealed by Pub. Act 89—2, § 5, eff. February 14, 1995)).

On October 4, 1996, Steve filed a petition for allocation of proceeds from the settlement of his Structural Work Act claim. In the petition, Steve stated that the net settlement proceeds payable to him after all liens, costs, and attorney fees was $375,337.33. The petition further alleged that 80% ($324,425.88) of the settlement proceeds represented Steve's future wage loss; 6.66% represented future medical expenses; 6.66% represented past medical expenses; and 6.66% represented pain and suffering. On January 14, 1997, the trial court entered an order requesting both parties to submit briefs suggesting the appropriate allocation of the settlement proceeds for purposes of a property settlement and child support.

Pursuant to this order, on February 3, 1997, Steve filed a brief in which he presented his proposal as to the appropriate allocation of the settlement proceeds. In his brief, Steve relied on this court's decision in *Villanueva v. O'Gara*, 282 Ill. App. 3d 147 (1996), and argued that a personal injury settlement could not be considered income for purposes of awarding child support. Steve argued that, because he was only 40 years old and physically unable to work, any lump-sum payment for child support was inappropriate and would result in hardship. Instead, Steve suggested that an annuity be purchased in the name of the minor.

Steve also noted that, prior to the dissolution proceeding, the parties had filed for bankruptcy protection in federal court. As part of that proceeding, the bankruptcy court apparently ordered that the parties deposit $50,000 with the bankruptcy trustee pending the payment of all administrative fees and unsecured claims. Steve argued that the parties should each pay $25,000 towards the satisfaction of this deposit amount.

On February 24, 1997, following a hearing, the trial court ordered Steve to pay the $50,000 bankruptcy deposit and other amounts from his settlement proceeds. Further, the trial court ordered the remaining sum of $324,425.88 to be allocated as follows: 10% ($32,442.50) to Janet as marital property; 20% ($64,885) to establish a trust for the support and benefit of Cassandra with Janet as trustee; and the remaining 70% ($227,098.38) to Steve as a distribution of marital

property. Following the denial of his posttrial motion, Steve filed a timely notice of appeal.

Steve contends on appeal that the trial court erred in finding that the settlement proceeds could be considered "income" for purposes of making a child support award. Steve does not challenge the trial court's decision to order the establishment of a trust or its decision to award Janet 10% of the remaining settlement proceeds. However, he argues that the trial court erred in determining and calculating the specific amount of child support. In support of this argument, Steve contends (1) that the trial court should have subtracted the 10% ($32,442.50) of the settlement proceeds awarded to Janet prior to calculating the 20% amount to be allocated to the section 503(g) trust (750 ILCS 5/503(g) (West 1996)) established on behalf of Cassandra; (2) that the trial court should have allocated only that portion of the settlement proceeds representing his lost earnings; and (3) that amount of the lump-sum payment to fund the trust was not proper in light of Cassandra's age and Steve's financial situation. Because these arguments are closely related, we will address them together.

■ When making an award of child support, the trial court must determine the statutory minimum amount by taking a certain percentage of the supporting party's *net* income. 750 ILCS 5/505(a)(1) (West 1996); *Villanueva*, 282 Ill. App. 3d at 150. In applying this statute, the trial court must first make a threshold determination as to the party's net income. 750 ILCS 5/505(a)(1) (West 1996); *Villanueva*, 282 Ill. App. 3d at 150. This court has noted that a personal injury settlement constitutes "net income" for purposes of section 505(a)(1) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/505(a)(1) (West 1996)) (Marriage Act or the Act) only to the extent that it reimburses the injured party for lost earnings. See *Villanueva*, 282 Ill. App. 3d at 150-51.

■ In the case at bar, although the court properly deducted $50,000 for the bankruptcy deposit, the court failed to deduct the 10% awarded to Janet and the 20% of the settlement representing damages for medical expenses and pain and suffering. Thus, the trial court failed to correctly determine Steve's net income prior to the allocation for child support.

In addition, even if the trial court had based its child support award on only the correctly determined net income, the award would have exceeded the statutory minimum contained in section 505(a)(1) of the Marriage Act. Section 505(a)(1) of the Marriage Act states that the court is to award 20% of the supporting party's net income for the support of one minor child. 750 ILCS 5/505(a)(1) (West 1996). The section lists five factors which the trial court may consider when deciding whether to deviate from the statutory minimum:

"(a) the financial resources and needs of the child;

(b) the financial resources and needs of the custodial parent;

(c) the standard of living the child would have enjoyed had the marriage not been dissolved; .

(d) the physical and emotional condition of the child, and his educational needs; and

(e) the financial resources and needs of the non-custodial parent." 750 ILCS 5/505(a)(2) (West 1996).

If the trial court deviates from this minimum amount, it must state "the reason or reasons for the variance from the guidelines." 750 ILCS 505(a)(2) (West 1996).

Since Steve is permanently disabled, the amount he was awarded for lost wages compensated him for the wages he would have earned throughout the remainder of his expected work life, which arguably could have been another 25 years (Steve was only 40 years old when he received the settlement award). However, Cassandra was six years old (12 years before reaching majority) at the time of the trial court's decision. Thus, even if the trial court had awarded only 20% of Steve's future net income, this amount would have, in essence, been tantamount to providing child support well past the time when Cassandra reached the age of majority. Put another way, the trial court, without comment or explanation, awarded child support for 25 years of future net income rather than the 12 years that would have taken Cassandra to majority. Because the trial court deviated from the statutory minimum for child support without stating its reasons for doing so, the trial court abused its discretion. See *In re Marriage of Metz*, 233 Ill. App. 3d 50, 56, (1992).

Janet argues that the issue of "net income" is not relevant because the trial court did not base its decision on section 505 of the Act (750 ILCS 5/505 (West 1996)). Rather, according to Janet, the trial court determined that Steve's settlement proceeds constituted marital property and ordered the establishment of the trust based on section 503(g) of the Act (750 ILCS 503(g) (West 1996)). Janet, therefore, contends that the trial court need not consider the guidelines contained in section 505 of the Act. We disagree with Janet.

Section 503(g) of the Marriage Act provides:

"The court if necessary to protect and promote the best interests of the children may set aside a portion of the jointly or separately held estates of the parties in a separate fund or trust for the support, maintenance, education, and general welfare of any minor, dependent, or incompetent child of the parties." 750 ILCS 5/503(g) (West 1996).

However, when a court orders a section 503(g) trust established for

the benefit of a child, it must proceed under the guidelines of the relevant statutory provision. *In re Marriage of Harsy*, 193 Ill. App. 3d 415, 423 (1990). For example, in *Harsy*, the appellate court held that, in ordering the establishment of a section 503(g) trust for the college education of the parties' children, the trial court properly considered the factors set forth in section 513 of the Marriage Act pertaining to the educational expenses of children. *Harsy*, 193 Ill. App. 3d at 423. Likewise, when a trial court orders the establishment of a trust for the purposes of child support, it must consider the factors set forth in section 505 of the Act. See *Harsy*, 193 Ill. App. 3d at 423.

The dissent's argument that it is not aware of a "case in which the amount of a section 503(g) trust was determined by taking a percentage of the supporting parties' net income" (298 Ill. App. 3d at 517) misses the point. While not addressing the precise issue in the case at bar, both *Harsy* (193 Ill. App. 3d 415) and *In re Marriage of Hobson*, 220 Ill. App. 3d 1006 (1991), stand for the proposition that, when establishing a section 503(g) trust, a trial court must make certain findings and provide some rationale for its decision regarding the funding of the trust. Here, the trial court provided no rationale for its funding decision, which ostensibly orders child support until the child reaches the age of 31.

Furthermore, when a court orders the creation of a section 503(g) trust for the benefit of a child, it must describe the terms of the trust with sufficient particularity. See *Hobson*, 220 Ill. App. 3d at 1014-15. The trial court must determine a dollar amount of child support and require the appointed trustee to make regular payments from the fund. *Hobson*, 220 Ill. App. 3d at 1015. Provisions may be made for the payment of the child's other reasonable expenses, such as maintenance, education, and general welfare. 750 ILCS 5/503(g) (West 1996); *Hobson*, 220 Ill. App. 3d at 1015. In addition, the trial court must provide for the termination of the trust upon the emancipation of the child and for the payment of any residue to the party who funded the trust. *Hobson*, 220 Ill. App. 3d at 1015. However, the trial court may make reasonable provisions for the child's college expenses. 750 ILCS 5/513 (West 1996); *Harsy*, 193 Ill. App. 3d at 422.

In the case at bar, we determine that the trial court failed to make the necessary findings regarding the creation of a trust under section 503(g) of the Act. Contrary to the dissent's belief, we do not hold that the trial court abused its discretion in ordering the creation of a trust, which would result in a reversal. We merely require the trial court to describe the terms of the trust with sufficient particularity and to make express findings and provide a rationale that supports its determination and comports with the relevant guidelines. Accordingly, we

vacate the trial court's creation of a trust and remand the cause with directions that the trial court proceed in conformity with this opinion.

■ Finally, Steve argues that the trial court erred by failing to credit him for Janet's portion of the $50,000 bankruptcy deposit, which was paid out of Steve's settlement proceeds. Steve claims that half of the $50,000 bankruptcy deposit should have been subtracted from Janet's property settlement because the debt was incurred by both parties. Thus, Steve urges this court to reduce Janet's property settlement award by $25,000. The record reveals that Steve raised this issue in his posttrial motion. However, when specifically asked about this argument during the posttrial motion hearing, Steve expressly disavowed the argument. Accordingly, we determine that Steve abandoned this issue.

For the foregoing reasons, we affirm the portion of the judgment ordering the $50,000 bankruptcy deposit allocation and the 10% marital property allocation to Janet, reverse the portion of the judgment funding the trust and vacate the portion of the judgment creating the trust, and we remand the cause for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and vacated in part; cause remanded.

RATHJE, J., concurs.

PRESIDING JUSTICE GEIGER, dissenting:

I respectfully dissent. I believe that the majority opinion improperly usurps the trial court's discretion to establish and fund a child support trust pursuant to section 503(g) of the Illinois Marriage and Dissolution of Marriage Act (the Act) (750 ILCS 5/503(g) (West 1996)). In reversing the trial court's determination, the majority has obviously chosen to ignore the plain language of section 503(g), as well as the unique circumstances of this case. In so doing, the majority has significantly undermined the ability of our trial courts to ensure that parents will take financial responsibility for their children.

The primary flaw in the majority's analysis is that it fails to differentiate between sections 505(a) and 503(g) of the Act. Unlike section 505(a), which directs the trial court to determine an award of child support by taking a fixed percentage of the supporting party's "net income" (750 ILCS 5/505(a)(1) (West 1996)), section 503(g) permits the trial court to set aside a portion of the parties' "jointly or separately held estates" to protect and promote the best interests of the children (750 ILCS 5/503(g) (West 1996)). Under section 503(g),

the focus is not on a distribution of the parties' "net income," but on the distribution of the parties' marital and nonmarital assets. See *Atkinson v. Atkinson*, 87 Ill. 2d 174, 178-79 (1981). Indeed, I am aware of no case in which the amount of a section 503(g) trust was determined by taking a percentage of the supporting parties' net income. See *In re Marriage of Andrew*, 258 Ill. App. 3d 924, 928-29 (1993); *In re Marriage of Vucic*, 216 Ill. App. 3d 692, 701 (1991); *In re Marriage of Harsy*, 193 Ill. App. 3d 415, 419-22 (1990).

I therefore fail to understand the majority's conclusion that Cassandra's trust had to be funded in accordance with the requirements of section 505(a). Such a conclusion improperly entangles the mechanics of section 505(a) with those of section 503(g) and is hopelessly irreconcilable with the plain language of section 503(g). Moreover, I believe that such an interpretation negates the very purpose of section 503(g), which is to ensure the availability of funds for a child's support and well-being even where the parents' future earnings will be insufficient to do so. See *Andrew*, 258 Ill. App. 3d at 928-29. The majority opinion effectively strips the trial court of this important tool and implies that parents have only limited financial responsibility for their children.

Additionally, the sole authority that the majority offers for its novel interpretation of section 503(g) is inapposite at best. See *In re Marriage of Harsy*, 193 Ill. App. 3d 415, 423 (1990). Although the court in *Harsy* did hold that a trial court must consider the factors contained in section 513 of the Act prior to establishing an education trust pursuant to section 503(g), the opinion contains absolutely *no* discussion concerning the manner in which such a trust must be funded. *Harsy*, 193 Ill. App. 3d at 423. The case certainly does not hold that section 503(g) trusts must be funded in conformity with the requirements of section 505(a).

Rather, under the plain language of section 503(g), I believe that the entirety of Steve's settlement proceeds were subject to allocation for Cassandra's trust. It is well settled that personal injury awards for claims that arise during the marriage are marital property subject to division or allocation under section 503. *In re Marriage of Burt*, 144 Ill. App. 3d 177, 182 (1986); *In re Marriage of Gan*, 83 Ill. App. 3d 265, 270 (1980). In the instant case, neither party disputes that Steve's personal injury settlement proceeds are compensation for a claim that arose during their marriage. As the entire settlement amount constituted marital property that was subject to allocation under section 503(g), I believe that it was unnecessary and irrelevant for the trial court to consider what portion of Steve's settlement proceeds constituted "net income." For this same reason, I do not believe that it was

necessary for the trial court to subtract that portion of the settlement proceeds awarded to Janet prior to calculating the portion to be allocated to Cassandra's trust.

Moreover, I do not believe that the trial court abused its discretion in making the threshold determination that a section 503(g) trust was necessary to protect and promote Cassandra's best interests. The trial court has the discretion to establish a section 503(g) trust from marital funds when there is evidence showing a need to protect the interests of the children. *Andrews*, 258 Ill. App. 3d at 928. The necessity of such a trust may be shown by either the unwillingness or inability of a parent charged with child support to make payment. *In re Marriage of Hobson*, 220 Ill. App. 3d 1006, 1013-14 (1991).

The record presented in the instant case clearly demonstrates that Steve is either unable or unwilling to meet his financial obligations to support Cassandra. Steve had not worked for several years prior to the judgment of dissolution, and his prospects for future employment are slight. His sole source of income is derived from his disability benefits and his workers' compensation and personal injury settlements. On two separate occasions, Janet was required to file a motion for a rule to show cause against Steve to compel compliance with the trial court's temporary support and counseling orders. At the time the dissolution order was entered, there was also a $1,700 arrearage on Steve's support obligations.

Moreover, conspicuously absent from the majority opinion is perhaps the most troubling evidence concerning Steve's financial priorities. The record reveals that, a year and a half after his injury, Steve purchased a $40,000 vehicle. If Steve truly were as concerned about his financial security as he represents in his brief, then I fail to comprehend the wisdom of making such a large purchase when Steve was totally disabled and his only income came from disability benefits. In light of such an extravagant purchase, and given the parties' need to obtain bankruptcy protection, I believe that trial court properly determined that the creation of the section 503(g) trust was absolutely necessary to protect Cassandra's best interests.

Nor do I believe that the trial court abused its discretion in awarding a lump-sum payment of 20% of the settlement proceeds to fund Cassandra's trust. At the time of the trial court's order, Cassandra was only seven years old. Excluding interest, the trust will provide a monthly amount of $491 until Cassandra reaches majority. However, Cassandra's right to support will not necessarily terminate at majority. Indeed, Cassandra has a reasonable expectation that she will continue to receive financial support through college. 750 ILCS 5/513 (West 1996); *Harsy*, 193 Ill. App. 3d at 422-24. I object to the majority's

mathematical analysis of this issue, as it completely fails to take such considerations into account.

In light of the fact that Steve will likely be unable to provide any additional financial support, I do not believe that $64,885 is an unreasonable amount to fund the trust. Such a sum will obviously be necessary to provide for Cassandra's basic needs during the next 11 years. Moreover, if properly invested, the trust could also help finance Cassandra's college education. In determining the trust amount, I believe that the trial court properly considered Cassandra's age, as well as Steve's age and future earning capacity.

Finally, the majority attacks the trial court's order because it fails to describe the terms of the trust with sufficient particularity and because it lacks specific findings explaining the trial court's rationale for establishing the trust. I believe that it is inappropriate for the majority to consider this issue when it was not raised by either party at trial or on appeal. Generally, issues not raised and argued before the appellate court are treated as waived. *Meyers v. Kissner*, 149 Ill. 2d 1, 8 (1992). The majority disregards this basic principle and issues its ruling without affording Janet the opportunity to brief this issue.

For the reasons already discussed, I believe that the record herein already provides sufficient justification for the trial court's order. Because I believe that the order effectuates the purpose of section 503(g) and ensures that Steve will take financial responsibility for Cassandra's well-being, I would affirm the judgment of the circuit court.